```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK

------------------------------X Docket#
UNITED STATES OF AMERICA,     : 20-mj-01072-SJB-1
                              :
                              :
     - versus -               : U.S. Courthouse
                              : Brooklyn, New York
                              :
BRIAN MAIORANA,               : November 10, 2020
          Defendant           : 5:30 PM
------------------------------X

        TRANSCRIPT OF CRIMINAL CAUSE FOR PROCEEDING
         BEFORE THE HONORABLE SANKET J. BULSARA
              UNITED STATES MAGISTRATE JUDGE
```

**A P P E A R A N C E S:**
(TELEPHONICALLY):


<u>For the Government</u>:        **Seth DuCharme, Esq.**
                                Acting U.S. Attorney


                           BY: **Artie McConnell, Esq.**
                                **Jonathan Algor, Esq.**
                                Assistant U.S. Attorney
                                271 Cadman Plaza East
                                Brooklyn, New York 11201


<u>For the Defendant</u>:         **James Darrow, Esq.**
                                Federal Defenders of New York
                                One Pierrepont Plaza
                                16th floor
                                Brooklyn, NY 11201


<u>Transcription Service</u>:     Transcriptions Plus II, Inc.
                                61 Beatrice Avenue
                                West Islip, New York 11795
                                laferrara44@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1  THE CLERK: This is Criminal Cause for
2 Arraignment, case number 20-mj-1072, United States v.
3 Brian Maiorana.
4  Counseling, starting with the government,
5 please state your appearances.
6  MR. MCCONNELL: For the United States, Artie
7 McConnell and Jonathan Algor.
8  Good evening.
9  THE COURT: Good afternoon.
10  MR. DARROW: James Darrow, Federal Defenders of
11 New York for Mr. Maiorana, who is present by video link,
12 your Honor.
13  THE COURT: Good afternoon. Good afternoon,
14 Mr. Maiorana. Mr. Maiorana, I just need to confirm, can
15 you hear me?
16  THE DEFENDANT: Yes. Yes, I can hear you.
17  THE COURT: Okay. Mr. Maiorana, the purpose of
18 today's proceeding is to explain to you your rights, and
19 determine what happens next in your case, but before I
20 can do any of that, I need to confirm, do you have any
21 trouble speaking or understanding English, sir?
22  THE DEFENDANT: No, your Honor.
23  THE COURT: Okay. Mr. Maiorana, the reason
24 that you are here today is because you've been arrested
25 and charged with certain crimes in a document called a

3
Proceedings

1  complaint, and as I said, I'm going to explain to you
2  certain rights that you have.
3           Your first right is your constitutional right
4  to remain silent.  What that means is you don't have to
5  make a statement at ay time, including to any law
6  enforcement official.  If you do make a statement,
7  however, that statement can be used against you including
8  in this case.
9           If you have made a statement in the past,
10 you're under no obligation whatsoever to make a future
11 statement.
12          Do you understand, sir, your right to remain
13 silent?
14          THE DEFENDANT:  Yes.
15          THE COURT:  Okay.  You also have a right to
16 counsel, which is a right to a lawyer, and you have a
17 right to have a lawyer to represent you from the time you
18 were arrested through any trial, or through the
19 conclusion of your case, including any appeal.  You have
20 a right to have a lawyer present during any questioning
21 by law enforcement, and to represent you in court, as
22 well as out of court.
23          You have a right to a lawyer of your own
24 choosing, however if you could not afford a lawyer, the
25 Court would appoint one for you, and you also have the

```
                                                              4
                         Proceedings
 1  right to represent yourself if that's what you wish to
 2  do.
 3              Do you understand your right to a lawyer, sir?
 4              THE DEFENDANT:  Yes, your Honor, I do.
 5              THE COURT:  Okay.  Now --
 6  (Pause)
 7              THE CLERK:  Judge, we seem to have lost you,
 8  Judge.
 9              THE COURT:  No, I'm just looking for the
10  financial affidavit of Mr. Maiorana.
11              THE CLERK:  Oh, all right.
12              THE COURT:  Okay.
13              THE CLERK:  I will check my email --
14              THE COURT:  Yep, I got it.
15              Mr. Maiorana, do you recall that you were asked
16  some questions about your financial circumstances
17  including your employment, and any debts?
18              THE DEFENDANT:  Earlier today.  Yes, sir, I --
19  I was -- I do remember that, yes.
20              THE COURT:  Okay.  There's a document called a
21  "Financial affidavit" which documents, or contains all of
22  that information.  You will, of course, receive a copy of
23  it, as will your lawyer.
24              I need to ask at this point because it requires
25  your signature, whether the Court has your permission to
```

5

Proceedings

1  affix what amounts to an electronic signature on the
2  document?
3          THE DEFENDANT:  Yes.
4          THE COURT:  Okay.  The Court's review of the
5  financial affidavit indicates that Mr. Maiorana is
6  entitled to court-appointed counsel, and I appoint the
7  Federal Defenders to represent him.
8          Mr. Darrow, I assume the Federal Defenders
9  accepts the appointment?
10         MR. DARROW:  Of course, your Honor.
11         THE COURT:  Okay.  Now Mr. Darrow, have you had
12  an opportunity to review the complaint with your client?
13         MR. DARROW:  Your Honor, I read it to him, and
14  we discussed it.  He did not have a copy of it, a
15  physical copy at that time, but I read it to him, and
16  we've discussed it.  I'm persuaded he understands what he
17  has been charged with.
18         THE COURT:  Okay.  And have you explained to
19  him his right to an in-person initial appearance, and
20  does he -- well, we'll start there.
21         MR. DARROW:  Yes, I have, your Honor, and the
22  defense is willing to waive his in-person appearance in
23  light of the ongoing pandemic for his safety, and
24  everyone else's, under the CARES Act, for that reason.
25         THE COURT:  Okay.  So just to confirm, your

Proceedings
6

1  client is willing to proceed via what amounts to
2  telephonic means for today's initial appearance?
3              MR. DARROW:  Yes, your Honor.
4              THE COURT:  Okay.  And I will just note for the
5  record, I can see both defense counsel, and the
6  defendant, although they cannot see me at the current
7  moment.
8              Okay.  Mr. Maiorana, because you were charged
9  in a document called a complaint, you have a right to
10 what's known as a preliminary hearing.  Okay?  That's a
11 hearing at which the government would have to demonstrate
12 that there's probable cause to believe that you committed
13 the crimes that are charged -- that you're charged with
14 in the complaint.
15             Now at that hearing, your lawyer would have an
16 opportunity to object to evidence that's put on by the
17 government, either in the form of exhibits or testimony,
18 to cross-examine any witness, and to offer argument on
19 your behalf.
20             Now in this court, there often are not
21 preliminary hearings for one of two reasons.  One reason
22 is, is that if the government goes to what's known as a
23 grand jury, and obtains what's known as an indictment,
24 then that charges you with this, or other offenses,
25 there's no longer a right to a preliminary hearing.

Proceedings

7

1    Second is, the defendant may choose to waive
2 his or her preliminary hearing after discussing the
3 matter with his counsel.
4    Do you understand your right to a hearing, sir?
5    THE DEFENDANT:  Yes, your Honor.
6    THE COURT:  Okay.  Mr. Darrow, does your client
7 have a position on the hearing at this point?
8    MR. DARROW:  Yes, we request one, your Honor.
9 Thank you.
10   THE COURT:  Okay.  Felix?
11   THE CLERK:  So 30 days from today would be
12 December 9th at 11 p.m.
13   THE COURT:  I think it's 21, unless -- either
14 21 or 14, depending on custody or not custody, so --
15   THE CLERK:  Oh.
16   THE COURT:  -- let's put it for 14 to start.
17   THE CLERK:  14 would be November 24th at 11
18 a.m.?
19   THE COURT:  Okay.  November 24th at 11 a.m.
20 Okay.
21   Before we proceed to bail, I'm reminding the
22 government of its obligation under Brady.  Pursuant to
23 Federal Rule of Criminal Procedure 5(f), the government
24 is reminded that it has an obligation under Brady v.
25 Maryland and the cases that follow it, to disclose to the

Proceedings

8

1  defendant all information, whether it's admissible or
2  not, that is favorable to the defendant, material either
3  to guilt or to punishment, and that is known to the
4  government.
5           The government must make good faith efforts to
6  disclose such information to the defendant as soon as
7  reasonably possible, after its existence becomes known to
8  the government.
9           The government's reminded that these
10 obligations are continuing, and they apply to information
11 whether or not it's credited.  For these purposes, the
12 government includes any federal, state, or local
13 prosecutors, law enforcement officials, or other
14 officials who participate in the investigation, and the
15 prosecution of the charged offenses, and the government
16 has an affirmative obligation to seek from these sources,
17 all information that's subject to disclosure.
18          If the government fails to comply with its
19 Brady obligations, it could be subject to sanctions, and
20 it could lead to the dismissal of the charges against
21 this defendant.
22          Mr. McConnell, do you understand these
23 obligations, and can you confirm that you have fulfilled,
24 or will fulfill them?
25          MR. MCCONNELL:  Yes, I can.

Proceedings
9

1      THE COURT:  Okay.  I will also enter a written
2 order capturing these obligations, and that will be
3 docketed after this proceeding.  Okay.
4      What is the parties' position on bail?
5      MR. MCCONNELL:  Your Honor, this is Artie
6 McConnell for the government.  It's my understanding that
7 the defense is not making a bail application today, and
8 will be consenting to a permanent order of detention.
9 However, I would like to briefly expand on the record
10 regarding why the government is seeking a permanent order
11 of detention, as there are factors outside of the four
12 corners of the complaint that have influenced that
13 decision.
14      THE COURT:  Before you do that, and I certainly
15 will let you do that, and give Mr. Darrow an opportunity
16 to respond, I just want to make sure I understand, are
17 you seeking a permanent order of detention without leave
18 to make a bail application in the future?
19      MR. MCCONNELL:  Certainly if the defense wants
20 to make a bail application in the future, we will hear
21 it, and we will respond to it at that time, but --
22      THE COURT:  Okay.
23      MR. MCCONNELL:  -- I do think it's --
24      THE COURT:  Go ahead.
25      MR. MCCONNELL:  So -- thank you, your Honor.

Proceedings

10

1    Again, as I mentioned, there are some
2 additional factors beyond what are articulated in the
3 complaint.  The complaint makes clear that in the wake of
4 the results of the presidential election, this defendant
5 greatly exceeded what can be characterized as political
6 hyperbole.  He used words like "carnage",
7 "extermination", "assassination".
8    He encouraged people to take "offensive action"
9 in an effort to threaten to kill members of the
10 government, including law enforcement agents, even going
11 so far as to calling for the bombing of an FBI building,
12 and citing the "Turner Diaries" which has been the
13 inspiration for numerous acts of terrorism, including the
14 1995 Oklahoma City bombing.
15    This conduct was not an aberration.  There were
16 prior postings from the same defendant on a different
17 internet platform where he referenced his desire to make,
18 and acquire, "weapons of war", to use his words.
19    But most importantly, your Honor, the results
20 of a court-authorized search warrant at the defendant's
21 residence this morning revealed that this was not simply
22 idle chatter in the wake of the presidential election.
23 The defendant appears to have taken steps to acquire
24 weapons that would make it possible for him to carry out
25 what he has stated in his violent messages.

```
                                                                   11
                         Proceedings
 1              Law enforcement recovered from his home, a
 2   semiautomatic GLOCK pistol, two magazines loaded with 45
 3   caliber ammunition, additional gun parts for a 22 caliber
 4   firearm, and 22 caliber ammunition, and firearm-related
 5   accessories, such as holsters and magazine holders.
 6              Now given the fact that the defendant has a
 7   felony conviction for a sex crime in Pennsylvania, and is
 8   a registered sex offender here in New York, the defendant
 9   was no doubt aware that he was prohibited from possessing
10   any firearm and ammunition, and in addition to the
11   charges in the complaint, the government expects to seek
12   charges for possessing a firearm and ammunition by a
13   convicted felon.
14              And indeed, there was additional messages where
15   he referenced trying to obtain a Poly80 Lower, which is a
16   reference to the upper portion of an AR-15 assault rifle.
17              Beyond that in the defendant's possession were
18   other weapons, including an expandable baton, a pistol-
19   style crossbow, a TASER.  He was in possession of other
20   military-style paraphernalia such as boots, and most
21   significantly, a skull mask which is often featured
22   prominently by far right militants in their propaganda
23   and training materials.
24              He was also in possession of something called
25   "The Anti-Government Movement Guidebook", and for
```

```
                                                                12
                         Proceedings
 1   purposes of bail, I think it's very significant that he
 2   was in possession of literature that related to obtaining
 3   citizenship in other countries, and how one could go
 4   about obtaining a foreign passport quickly.
 5              So when you take all of these factors together,
 6   and you analyze them under the rubric of the Bail Reform
 7   Act, I think it's clear that the defendant is a risk of
 8   flight, and presents an irremediable threat of
 9   dangerousness to the community.
10              Regarding his flight risk, certainly the weight
11   of the evidence in this case is overwhelming.  The
12   defendant faces a significant statutory period of
13   incarceration for both the currently charged offense, and
14   for any offense under 922(g) that the government would
15   seek charge him with pursuant to a grand jury indictment,
16   but when you consider that the defendant had a book
17   called, "The Insider's Guide to Instant Citizenship and
18   Second Passports", it sort of takes that hypothetical
19   flight risk, and it makes it very real, and very acute.
20              So for those reasons, the government believes
21   that the preponderance of the evidence shows that he is,
22   in fact, a risk of flight, and deserves to be detained on
23   that basis alone.
24              Regardless, it's clear from the facts that are
25   in the complaint, and that I've outlined on the record,
```

13
Proceedings

1  that the defendant is a significant danger to the
2  community, and really no bail package would be sufficient
3  to address that risk.
4        The Second Circuit has noted in prior cases
5  that crimes involving the mere possession of firearms are
6  inherently dangerous.  They constitute crimes of violence
7  for purposes of the Bail Reform Act, and that fact
8  standing alone is significant.
9        Of course, the evidence that's uncovered during
10 the course of the investigation has revealed that the
11 defendant has apparently embraced some extremely violent
12 views, some of which are described in the complaint.
13 He's glorified acts of terrorism against politicians,
14 protestors, and members of law enforcement, and certain
15 religious groups, as I mentioned, and he's discussed
16 engaging in that sort of violent conduct himself.
17       And the fact that he, knowing that he has a
18 felony conviction, covertly purchased gun parts,
19 ammunition and other weapons, I think needs to give the
20 Court pause when considering his release under any
21 circumstances, and even under the strictest of bail
22 conditions.
23       So I understand that we don't have a package
24 before the Court today, however, I wanted to complete the
25 record because the government respectfully submits that

```
                                                              14
                         Proceedings
 1   there are no conditions, or combination of conditions
 2   that would assure the safety of the community, or the
 3   defendant's return to court.
 4               THE COURT:  Okay.  Mr. Darrow?
 5               MR. DARROW:  Your Honor, it's true, I have no
 6   bail package to present at this time.  We do expect to
 7   present one in the future, so I would only ask that the
 8   Court enter any order of detention with leave for us to
 9   do so, if we can be heard in response to the government's
10   representations at that time.
11               THE COURT:  Okay.  The Court is going to enter
12   a permanent order of detention, and as is -- and the
13   government has indicated there's no objection to leave to
14   file a bail application in the future, and so the
15   defendant is granted leave.
16               The Court has an independent obligation to
17   determine whether or not detaining the defendant is
18   appropriate, notwithstanding any presentation by other
19   sides, and the Court concludes that based on the charged
20   conduct, and the proffered evidence, that the government
21   has satisfied its burden of demonstrating that the
22   defendant is a danger to the community, at a minimum, and
23   also a flight risk, and justifies his detention at this
24   point.
25               But the defendant may present a package in the
```

```
                                                              15
                         Proceedings
 1   future since there's no objection to that, and he can be
 2   heard at that time.
 3              Okay.  Is there anything else from the
 4   government?
 5              MR. MCCONNELL:  No, your Honor.  Thank you.
 6              THE COURT:  Okay.  Mr. Darrow, anything else?
 7              MR. DARROW:  Yes, your Honor.  I had previously
 8   requested with notice to the government, medical
 9   attention for my client at the MDC, and you were copied
10   on that as well, but I wanted to mention that for the
11   record, but I did not want on the record to go into that
12   private medical detail.  So I just wanted to confirm that
13   that application is pending before your Honor.
14              THE COURT:  Okay.  Does the government want to
15   be heard on this?
16              MR. MCCONNELL:  No, we have no objection to
17   that.
18              THE COURT:  Okay.  I'm prepared to enter a
19   medical order for the MDC to evaluate Mr. Maiorana's
20   medical conditions, and provide treatment as necessary,
21   and we will enter an order to that effect forthwith.
22              MR. DARROW:  Thank you, your Honor.
23              THE COURT:  Okay.
24              Anything else, Mr. Darrow?
25              MR. DARROW:  Nothing from the defense at this
```

Proceedings

16

1  time.  Thank you.
2       THE COURT:  Okay.  I wish everybody good
3  health.  Have a good evening.
4       PRETRIAL SERVICES:  Your Honor?
5       MR. DARROW:  Thank you, your Honor.
6       MR. MCCONNELL:  Thank you.
7       PRETRIAL SERVICES:  Your Honor?
8       THE COURT:  Yes.
9       PRETRIAL SERVICES:  This is Janine Quijije from
10  pretrial services.
11       THE COURT:  Yes.
12       PRETRIAL SERVICES:  I just want to state on the
13  record, we submitted a bail recommendation, and based off
14  what the government just disclosed, we weren't aware of
15  that before we made our recommendation.  I just want to
16  make the record clear, that based on -- due to the
17  newfound information, we would respectfully change our
18  recommendation, and recommend that the defendant be
19  detained.
20       THE COURT:  Okay.  Well, should -- at this
21  point, I'm entering a permanent order of detention with
22  leave as I've indicated.  Should the defendant present a
23  package, and if necessary for a second report, you
24  certainly -- the Court certainly grants leave to submit a
25  revised report that everybody can evaluate at that time,

17
Proceedings

1  should that occur, okay?
2            PRETRIAL SERVICES:  Thank you.
3            THE COURT:  All right.  Good night, everybody.
4            THE CLERK:  Thank you.
5            MR. MCCONNELL:  Thank you, your Honor.
6            MR. DARROW:  Thank you.
7                    (Matter Concluded)
8                          -o0o-

18

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **13th** day of **November** 2020.

*Linda Ferrara*
Linda Ferrara

AAERT CET 656
Transcriptions Plus II, Inc.