

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

DMP:JAM/JEA
F.# 2020R01049

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 11, 2022

By ECF and Email

The Honorable Frederic Block
United States District Court
Eastern District of New York
Brooklyn, New York 11201

      Re:    United States v. Brian Maiorana
              Docket No. 20-CR-519 (FB)

Dear Judge Block:

      The government respectfully submits this letter in advance of sentencing in the above-captioned case, which is scheduled for February 23, 2022. On April 26, 2021, the defendant pled guilty to possessing a firearm as a previously convicted felon, in violation of Title 18, United States Code, Section 922(g)(1). The defendant's total offense level is 12, which provides for an advisory sentencing range per the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") of 12 to 18 months' custody. The defendant stipulated to this Guidelines calculation in a written plea agreement with the government. This is also the same range calculated by the Department of Probation in the Pre-Sentence Investigation Report ("PSR"). See PSR at ¶¶ 15-24.

      This does not capture all of the defendant's offense conduct. As detailed herein, the defendant also posted violent content on social media, threatening to kill politicians, protestors, law enforcement officers and others, and was found in possession of ammunition and additional firearm peripherals, among other items. Accordingly, for the reasons set forth in the PSR and herein, the government respectfully recommends an above-Guidelines sentence of 36 months imprisonment. The Guidelines range is insufficient to address (1) the seriousness of the defendant's conduct, (2) the defendant's flagrant disregard for the law and potential danger to the community, and (3) the need for specific and general deterrence. See 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(C). The context in which the defendant committed the instant offense reflects a potential for violence that is simply not quantified by the Guidelines. Accordingly, a more severe incarceratory sentence is warranted. Notably, the government advised the defendant prior to plea, and included in the plea agreement, the government's intent to seek this above-Guidelines sentence.

Offense Conduct

The PSR accurately summarizes the offense conduct. See PSR at ¶¶ 4-11. As described in the PSR and herein, an investigation by agents from the Federal Bureau of Investigation ("FBI") and members of the Joint Terrorism Task Force ("JTTF") revealed that, in or about and between September 2020 and November 2020, the defendant posted violent content on social media, threatening to kill politicians, protestors, law enforcement officers and others. The investigation culminated in the execution of a court-ordered search warrant of the defendant's Staten Island residence, which yielded, inter alia, a .45 caliber Glock semiautomatic pistol and ammunition. As a convicted felon, the defendant was barred from possessing a firearm or ammunition.

I.   The Defendant

The defendant is a 55-year-old citizen of the United States who was born in Brooklyn, New York and currently resides in Staten Island. See PSR at ¶¶ 33-47. He has a felony conviction from Pennsylvania for statutory sexual assault, stemming from a sexual relationship he had with a 13-year old that began when the defendant was 38. Id. at ¶ 26. He is a Level 1 registered sex offender in New York. Id. at ¶ 65. He has held a variety of jobs and was enlisted in the Navy from 1985 to 1993. See PSR ¶ 66. He also previously held a pistol permit, issued through the Orange County Sheriff's Office on December 1, 1992, which he had to forfeit as the result of his felony conviction. See PSR ¶ 7.

II.   The Offense and Relevant Conduct

As detailed in the PSR, in or about and between September 2020 and November 2020, the defendant made numerous social media posts threatening to kill protesters, politicians, law enforcement officers, and others, including the following:[1]

- On or about October 19, 2020, the defendant posted: "Its come to the point where pipe bombs need to be thrown into these mobs of potentially non violent violent protesters."
- On or about November 5, 2020, the defendant posted: "The carnage needs to come in the form of extermination of anyone that claims to be democrat…as well as their family members."
- On or about November 8, 2020, the defendant posted: "As the Jew Senator from Jew York said nothing is off the table. The Turner Diaries must come to life. We blow up the FBI building for real. All the alphabet agencies assassination will become the new normal now…that the electoral process is finished."[2]

---

[1]   All posts are quoted as they appeared, including with typographical and punctuation errors.
[2]   The "Turner Diaries" is a 1978 novel by William Luther Pierce that depicts a violent revolution in the United States which leads to the overthrow of the federal government, a nuclear war, and, ultimately, a race war. All groups opposed by the novel's protagonist, Earl Turner,

- On or about November 8, 2020, the defendant posted: "All right thinking people need to hit the streets while these scumbags are celebrating and start blowing them away," referring to those celebrating the result of the 2020 Presidential Election.
- On or about November 8, 2020, the defendant posted: "Soap Box, Ballot Box…that was fraudulently stolen from us, Now Cartridge Box." The reference to "Cartridge Box" referred to ammunition, or "cartridges."
- On or about November 8, 2020, the defendant posted: "The time has now past for patriots to stop being on the defensive…defensive action is a position of weakness. We must take offensive action starting now. All of you know what that is."

PSR ¶ 4. The defendant had previously posted similar content on the mymilitia.com forum under the username "Proud Patriot Sailor." See PSR ¶ 5. Specifically, on or about June 16, 2020, the defendant responded to a posted titled, "its Getting soon that were going to have to gear up are u up to the task," saying "I just joined, and right now I have no implement of war. Other than a steel police baton…I ordered a poly80 lower and an aluminum…waiting on a milling drilling machine that's very expensive to purchase. To start manufacturing implements of war." Id.
A "poly80 lower" refers to the upper portion of an AR-15 assault rifle. Id. Indeed, despite his felony conviction, the defendant's financial records indicated that, earlier in 2020, he had purchased various parts for a semiautomatic handgun, as well as a crossbow, combat boots and other military paraphernalia. Id. at ¶ 8.

The results of a court-authorized search warrant of the defendant's residence yielded the following:

- a semiautomatic .45 caliber Glock pistol;
- two magazines loaded with .45 caliber ammunition;
- gun parts for a .22 caliber firearm;
- .22 caliber ammunition;
- firearm peripherals, most notably a holster and magazine storage combinations;
- an expandable baton;
- a crossbow; and
- a taser.

See PSR at ¶ 9. The defendant also possessed military-style paraphernalia, including a skull balaclava, which is featured prominently by white supremacist and other far-right militants in

---

including Jewish people, non-white people, "liberal actors" and politicians, are exterminated. The Turner Diaries has been influential amongst white nationalist and neo-Nazi groups and has been cited as the inspiration for numerous acts of violence and terrorism, including the 1995 Oklahoma City bombing.

propaganda and training materials. He also had a copy of the "Anti-Government Movement Guidebook" and literature related to obtaining citizenship in other countries and how to quickly obtain additional passports.

On April 26, 2021, the defendant pled guilty to possessing a firearm as a previously convicted felon, in violation of Title 18, United States Code, Section 922(g)(1). Per the written plea agreement with the government, the defendant stipulated to a total offense level 12. This is also the same range calculated by the Department of Probation in the PSR. See PSR at ¶¶ 15-24. As the defendant falls within Criminal History Category II, this offense level carries an advisory sentencing range of 12 to 18 months' imprisonment. In the written plea agreement, the government informed the defendant that "[b]ased on the facts and circumstances now known . . . the [government] intends to seek an above Guidelines sentence."

Aside from his guilty plea, the defendant has shown little remorse for his offense conduct. In emails sent from the Metropolitan Detention Center ("MDC"), the defendant has maintained that his conduct was "acceptable," as he has the "right to protect himself." PSR at ¶ 11. Specifically, the defendant communicated in emails that he believes that there will be a civil war in the United States that will cause 100 million deaths, and that he wants to be out of jail before the "war" commences, presumably so that he can participate in it. Id.

Sentencing Law and Factors Warranting an Above-Guidelines Sentence

The standards governing sentencing are well-established. In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court rendered the Guidelines advisory, and emphasized that a sentencing court must consider both the Guidelines and the 18 U.S.C. § 3553(a) factors when making a sentencing decision. Id. at 264; see also United States v. Kimbrough, 552 U.S. 85 (2007) (stating that "the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence").

However, that the Guidelines are non-binding does not render them irrelevant to the imposition of an appropriate sentence. In Gall v. United States, 552 U.S. 38, 128 S. Ct. 586 (2007), the Supreme Court instructed that the sentencing court should calculate the Sentencing Guidelines range, permit the government and the defendant "an opportunity to argue for whatever sentence they deem appropriate," consider all of the § 3553(a) factors, and finally pronounce a sentence taking into account all of the relevant factors. Id. at 596-97. The Gall Court further instructed that, in the event that the sentencing court decides to impose a variance sentence, the court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Id. (noting that a "major departure should be supported by a more significant justification than a minor one"). When "rendering a sentence, the district court must make and place on the record an individualized assessment based on the particular facts of the case." United States v. Carter, 564 F.3d 325, 328 (4th Cir. 2009). Ultimately, the court "must state in open court the particular reasons supporting its chosen sentence." Carter, 564 F.3d at 328 (quoting 18 U.S.C. § 3553(c)).

Here, several factors militate in favor of a substantial upward departure. See PSR at ¶ 100 ("apart from the conduct for which he was held accountable for Guidelines purposes, the defendant was involved in a myriad of other conduct."). As these and other factors also weigh in

4

favor of the upward variance advocated by the government herein, they are discussed concurrently below.  See generally Gall v. United States, 522 U.S. 38 (2007) (variance outside the Guidelines range should occur after consideration of all relevant departure provisions); United States v. Chase, 560 F.3d 828 (8th Cir. 2009) (departure precedents do not bind district courts with respect to variance decisions, but may be considered persuasive authority); United States v. McIntyre, 531 F.3d 481 (7th Cir. 2008) (post-Booker, district courts need not follow § 4A1.3 when imposing an above-guidelines sentence, but must provide a statement of reasons consistent with section 3553(a)).

   First, as noted in the PSR, while the defendant's "transmission of threats to injure" over social media did not factor into the Guidelines calculation, "it can be considered additional criminal conduct and worthy of sentencing consideration, per Guideline 5K2.0."  PSR at ¶ 89.  Given the direct correlation between the defendant's illegal possession of a firearm and his violent communications threatening to kill protesters, politicians, law enforcement officers and others, the import of his conduct is simply not captured by his offense level and warrants greater weight from the Court at sentencing.  See United States v. Kaye, 23 F.3d 50, 53 (2d Cir. 1994) (affirming upward departure where Guidelines did not capture the proper degree of harm or consequences of criminal conduct).

   Second, the instant offense was not aberrational.  As described in the PSR and herein, the defendant sought to arm himself beyond the one firearm for which he pled guiltyto possessing.  Specifically, of the defendant possessed several parts to construct "ghost" guns, which are firearms that have been assembled from different parts, none of which contain a serial number or identifying markings, thereby making them difficult for law enforcement to trace.  As these firearms were not fully assembled, they are not accounted for in the Guidelines per § 2K2.1(b), which increases the offense level depending on the number of firearms involved in the offense.  Nevertheless, the defendant's possession of additional .45 and .22 caliber ammunition is telling and speaks to his intent to fully assemble or otherwise acquire additional firearms – or "weapons of war" as he called them.  This is likewise not accounted for by the Guidelines and provides justification for an upward variance.

   Finally, while the government is not contesting the downward Guidelines adjustment for acceptance of responsibility, the defendant refuses to acknowledge the criminal nature of his conduct.  As described in the PSR and herein, the defendant believes his conduct was justified due to the impending civil conflict in the United States.  The defendant's recalcitrance on this key issue deserves serious consideration by the Court.  See United States v. Broxmeyer, 699 F.3d 265, 295 (2d Cir. 2012) (stating that defendant's "lack of remorse for, or even appreciation of, the seriousness of the totality of his conduct…further expand[s] the range of substantively reasonable sentences to allow the district court to afford adequate specific deterrence and protection of the public"); accord United States v. Kaziu, 559 F. App'x 32, 39 (2d Cir. 2014) (summary order).

5

Argument

In this case, the Government respectfully submits that the Court should impose an above-Guidelines sentence of 36 months imprisonment based on (1) the seriousness of the defendant's conduct, (2) the defendant's disregard for the law, and (3) the need for specific and general deterrence.  See 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(C), (a)(6).

I.   The Defendant's Conduct Demands a Significant Incarceratory Sentence

The defendant pled guilty to a serious criminal offense, and circumstances surrounding the charges are even more so.

The Second Circuit has held that crimes involving the mere possession of firearms are inherently dangerous.  United States v. Dillard, 214 F.3d 88, 96 (2d Cir. 2000).  In Dillard, the Second Circuit observed that:

> Firearms are instruments designed for the use of violent physical force, whether legal or illegal.  Apart from use for target practice in sport, firearms have no functional utility other than to threaten or cause harm to persons, animals, or property… [F]irearms are conventionally regarded as essential equipment of criminals engaged in violent crime.

214 F.3d at 93.  Additionally, the gun parts the defendant possessed speak to his intent to assemble "ghost guns."  While there is no federal statute that outlaws or provides enhanced penalties for privately manufactured guns or gun parts, courts have recognized that such "untraceable" weapons warrant special consideration at sentencing.  See United States v. Kamali, 834 Fed.Appx. 644 (2d Cir. 2020) (sale of multiple "ghost guns" was a factor to be considered at sentencing); United States v. Trujillo, 817 Fed.Appx. 634, 636 (10th Cir. 2020) (defendant who sold illegal firearms noted to undercover agents that the "best part" about "ghost guns" was "their lack of serial numbers."); United States v. McSwain, 2019 WL 1598033 (D.D.C. 2019) (slip opinion) (noting "concern" about possession of a "ghost gun").  Thus, the defendant's acquisition of these items in addition to his possession of a firearm within the meaning of Section 922(g) warrants a substantial jail sentence.

Moreover, the defendant's possession of a firearm, ammunition and additional gun parts did not occur in a vacuum – he possessed these items while he simultaneously threatened to "exterminate" individuals of a different political persuasion, "as well as their family members"; urged like-minded individuals to take "offensive action" to kill "scumbags" celebrating the outcome of the U.S. presidential election; and called for the bombing of an FBI building and assassinations at other government agencies.  These active calls to violence cannot be uncoupled from his gun possession and speak to the severity of the offense conduct.

6

II.  The Need for Specific and General Deterrence Is High

A lengthy sentence is necessary to deter the defendant, and others like him, from committing future crimes.

The defendant's offense conduct involved considerable planning – notably, to procure the firearm, ammunition and "ghost gun" parts – and thus requires a sentence that acts as a strong general deterrent. See United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006) ("crimes [that] are more rational, cool, and calculated than sudden crimes of passion or opportunity . . . are prime candidates for general deterrence") (internal quotation omitted). As with all crimes involving premeditation, a heavy sentence is necessary to deter others that might consider similar conduct.

Yet the deterrence factor is even more acute in this context. Specifically, a substantial sentence in this case would send an appropriate and much-needed message to all persons harboring any notion that acquiring and using illegal weapons is not worth the risk. Strong punishment for the defendant's inexcusable conduct sends the appropriate message to others – attempting to pursue these types of weapons will be prosecuted aggressively, and those who violate the law in this manner will be convicted and punished accordingly. Recent events have demonstrated the enormous toll in loss of life that gun violence – whether in the context of gang violence or domestic terrorism – creates in communities across the country. The recommended sentence of 36 months captures this understanding and sends the appropriate message to the public.

Beyond merely fashioning an appropriate general deterrent, the Court's sentence must deter the defendant himself. As described herein, the evidence uncovered during the investigation has revealed that the defendant has embraced and expressed extremely violent thoughts, including promoting acts of mass murder, assassination, and acts of terrorism. There are also strong indications that the defendant's views have not abated since his arrest in this case. Specifically, communications between the defendant and third parties during the defendant's incarceration regularly feature inflammatory sentiments which are troubling because of his prior linking of similar extremist views with praise and ideations of violent acts, which were accompanied by his possession of a firearm, ammunition and other gun parts.

III.  Nothing in the Defendant's Background Provides Significant Mitigation

The circumstances of the defendant's upbringing and history do not weigh in favor of sentence below the 36 months requested by the government. PSR ¶¶ 79-95; See United States v. Vera Ramos, 296 Fed. Appx. 201, 203 (2d Cir. 2008) (affirming guideline sentence despite defendant's "difficult upbringing" and noting district court's observation that such circumstances are "almost universal" among defendants). ████████████

---

3 ████████████



### Conclusion

In this case, an above-Guidelines sentence of 36 months appropriately captures the defendant's egregious conduct, mitigates any danger he presents to the community, and provides a powerful deterrent message. The government respectfully submits that such a sentence would be sufficient, but not greater than necessary, to carry out the goals of sentencing set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

BREON PEACE
United States Attorney

By: /s/
Artie McConnell
Jonathan E. Algor
Assistant U.S. Attorneys
Eastern District of New York
718-254-7000

cc: James Darrow, Esq. (by ECF and E-mail)
Patricia Sullivan, United States Probation Officer (by E-mail)

