**Federal Defenders**
OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David Patton
*Executive Director and Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

May 9, 2022

BY ECF

The Hon. Frederic Block
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

  Re: *United States v. Brian Maiorana*, No. 20 Cr. 519 (FB)

Your Honor:

  This office represents Brian Maiorana. Mr. Maiorana has been incarcerated at MDC Brooklyn for approximately 18 months, a period of time which all parties agree represents the top of his Guidelines range. (*See* PSR 74; Gov't Feb. 11, 2022, Let. 1). On April 26, 2021, Mr. Maiorana pled guilty pursuant to a plea agreement to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). I submit this letter in connection with his sentencing, which is currently scheduled for May 18, 2022, at 3:00 p.m.

  The defense respectfully urges the Court to impose a sentence of time served, the equivalent of a top-of-Guidelines sentence. No statutory factor warrants a longer term, let alone the extraordinary 36-month sentence called for by the government. The government erroneously points to political speech that Mr. Maiorana posted on right-wing Internet message boards, which the government incorrectly characterizes as illegal "threats." But Mr. Maiorana posted no threats, his speech was protected, and it would be unconstitutional, not to mention unjust, to increase Mr. Maiorana's punishment for it.

  Brian Maiorana possessed a firearm in a misguided attempt to exercise what he believed were his Second Amendment rights to defensively protect himself, his home, and his privacy, egged on explicitly by the mainstream politicians. He has already suffered unusually severe punishment for what he did, measured both by the Guidelines and by the fact that much of his pretrial detention was served in lockdown at MDC Brooklyn due to Covid-19. He should not be further punished for what he said.

  Attached for the Court's consideration is a letter from Mr. Maiorana's girlfriend, Isabel Beltran.

1

I.      **BACKGROUND**

Around the time of the 2020 election, Brian Maiorana posted commentary about the protests and related political tumult on a right-wing message board and related social media. The government saw his commentary, obtained a search warrant of his home, and found there the pistol and ammunition giving rise to this prosecution.

Mr. Maiorana has one prior felony conviction, for statutory sexual assault. He completed his sentence for that offense in 2017. The prior felony made it illegal for Mr. Maiorana to possess the firearm in this case, and is incorporated into his criminal history category and thus his stipulated Guidelines range in this case, but it has no other relevance. The government agrees, making only passing reference to the prior conviction, and arguing that Mr. Maiorana's "alleged prior victimization"—which undoubtedly gave rise to his prior conduct—has "no apparent link to the criminal conduct here." (*See* Gov't Let. 2, 7-8).

Rather, the government's sentencing argument principally relies upon Mr. Maiorana's speech. The government repeatedly characterizes its proffered online commentary by Mr. Maiorana, which is also detailed in the PSR, as illegal "threats" to injure or even "kill politicians, protesters, law enforcement officers and others." (*Id.* at 2). Indeed, Mr. Maiorana was initially charged with making illegal threats on the Internet. But he did no such thing.

Some legal background is relevant here. A "prediction" that someone will be killed "conveys no explicit or implicit threat," and "an imperative intended to encourage others to take violent action" is not an illegal threat either. *United States v. Bagdasarian*, 652 F.3d 1113, 1119 (9th Cir. 2011). To be sure, "[t]here are many unstable individuals in this nation to whom assault weapons and other firearms are readily available, some of whom might believe they were doing the nation a service were they to follow [the defendant's] commandment." *Id.* But that possibility does not transform protected speech into an illegal threat.

The Second Circuit test for whether speech is a criminal true threat was set forth in *United States v. Kelner*, 534 F.3d 1020 (2d Cir. 1976):

> So long as the threat on its face and in the circumstances in which it is made is so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution, the statute may be properly applied.

*Id.* at 1027; *see also United States v. Francis*, 164 F.3d 120, 123 (2d Cir. 1999) (reaffirming *Kelner*).

The government's proffered statements fail this test. None is an unequivocal threat on its face. Rather, they mostly predict or suggest generalized future violence. For example, "Now Cartridge Box," or "We must take offensive action starting now," or "assassination will become the new normal now" are predictions, imperatives to others, and similar statements of future

2

action, not immediate, unequivocal, cognizable threats. *See Bagdasarian*, 652 F.2d at 1199. Nor are they at all "specific as to the person threatened." *See Kelner*, 534 F.3d at 1027.

As for the statement "[a]ll right thinking people need to hit the streets while these scumbags are celebrating and start blowing them away"—this too is not a threat. It is fantastical hyperbole, clearly meant to blow off Mr. Maiorana's frustration and anger—shared by a huge proportion of the electorate at the time—that the electoral process has been subverted. This is protected speech. *See Watts v. United States*, 394 U.S. 705, 706, 708 (1969) (statement that "[i]f they ever make me carry a rifle the first man I want to get in my sights is L.B.J." not a "true threat" as a matter of law). At the absolute most, this is, if anything, a clumsy, generalized attempt at incitement, which, again, is not a threat. *See Bagdasarian*, 652 F.2d at 1199.

The larger background point for the Court to recall is that this sort of speech has, unfortunately, been normalized by a plurality of politicians, and is now common to huge numbers of Americans voicing their political beliefs. If political speech of the kind at issue here were illegal, much of this country would be subject to arrest.

The *New York Times* recently described the virulent political discourse surrounding the 2020 election as arising because "the former president's own violent language fueled a mainstreaming of menacing political speech and lawmakers used charged words and imagery to describe the stakes of the political moment." Catie Edmondson & Mark Walker, "One Menacing Call After Another: Threats Against Lawmakers Surge," The New York Times (Feb. 9, 2022).[1]

Indeed, "[f]ar-right members of Congress have hinted that their followers should be prepared to take up arms and fight to save the country, and in one case even posted a video explicitly violent acts against Democrats." *Id.* For example, one state representative referred to a young conservative's musing "when do we get to use the guns?" and "how many elections are they going to steal before we kill these people?" as "a fair question." Lisa Lerer & Astead W. Herndon, "Menace Enters The Republican Mainstream," The New York Times (Nov. 12, 2021).[2] A candidate for Senate made this statement, strikingly akin to Mr. Maiorana's own: "When the Gestapo shows up at your front door . . . you know what to do." *Id.*

The fact of the matter is that a "sizable" and politically "influential" number of American citizens harbor "the belief that the country is at a crossroads that could require armed confrontation." *Id.* (citing polling that "30 percent of Republicans . . . believe that 'true patriots' may have to resort to violence to 'save' the country"). Mr. Maiorana's speech was not illegal: it was mainstream political discourse.

## II. APPLICABLE SENTENCING LAW

A sentencing court is required to consider the factors set forth in 18 U.S.C. § 3553(a) in determining a reasonable sentence in each individual case. *See United States v. Booker*, 543 U.S. 220 (2005); *Gall v. United States*, 552 U.S. 38, 49-50 (2007). Section 3553(a) directs that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the

---

[1] *At* https://www.nytimes.com/2022/02/09/us/politics/politician-death-threats.html.
[2] *At* https://www.nytimes.com/2021/11/12/us/politics/republican-violent-rhetoric.html

purposes set forth in Section 3553(a)(2)," which in turn sets forth that the applicable purposes are:

>   (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   (B)   to afford adequate deterrence to criminal conduct;
>   (C)   to protect the public from further crimes of the defendant; and
>   (D)   to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner.

To arrive at such a sentence, the Court is further directed to consider these additional factors set forth in Section 3553(a): (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established in the Sentencing Guidelines; (5) pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities among similarly situated defendants; and (7) the need to provide restitution. In every case, the sentencing court "must make an individualized assessment based on the facts presented." *Gall*, 552 U.S. at 50.

The defense stipulated in the plea agreement to the government's Guidelines estimate of 12-18 months. Probation agrees this is the applicable range.

However, the Guidelines range is just one of several factors set forth in Section 3553(a) that a district court must consider when imposing sentence. *See supra*; *see also Pepper v. United States*, 562 U.S. 476, 490 (2011). A sentencing court "has broad latitude to 'impose either a Guidelines sentence or a non-Guidelines sentence.'" *United States v. Rigas*, 583 F.3d 108, 114 (2d Cir. 2009) (citation omitted).

### III.   ARGUMENT

A sentence of time served, which works out to a top-of-Guidelines sentence for a man who possessed an illegal firearm in his home, is sufficient, but not greater than necessary, to accomplish the purposes of sentencing.

No sentencing factor warrants the above-Guidelines sentences advocated by Probation and the government. As discussed above, Mr. Maiorana did not make illegal threats on the Internet. His speech was political, constitutionally protected, and well inside the mainstream for the plurality of citizens and politicians in this country who believe the last Presidential election was stolen.

Increasing Mr. Maiorana's punishment for this protected speech is forbidden by the First Amendment. *See, e.g.*, *United Statse v. Lemon*, 723 F.2d 922, 937-38 (D.C. Cir. 1983) ("a court may not punish an individual by imposing a heavier sentence for the exercise of first amendment rights. . . . A sentence based to any degree on activity or beliefs protected by the first amendment is constitutional invalid."); *and see United Statse v. Stewart*, 686 F.3d 156, 169 (2d Cir. 2012) ("We again emphasize the complete bar on the use of protected speech, belief, or association at

sentencing for the purpose of punishment based on the feature that warrants its first Amendment protection.").

Nor does Mr. Maiorana's speech or any of the lawful paraphernalia found in his home (legal gun parts, combat boots, a crossbow, and other items) reflect an unusual "potential for violence," as the government urges. (Gov't Let. 1). There is no competent basis to conclude that Mr. Maiorana intended to use the firearm in question himself against any person. To the extent Mr. Maiorana spoke of his own need to "gear up," the context is clear that his intent was self-defense within his home: "Everyone ready for election high spirits…???? Have plenty ammo, food, and water …??? A bug out place to go if your unfortunate enough to be in a communist shithole inner city…??? God speed to all."

In this country, we do not prosecute people for speaking their sincerely held political beliefs aloud, even if they may be "vehement, caustic . . . unpleasantly sharp attacks," "vituperative" or "abusive." *Watts v. United States*, 394 U.S. 705, 706, 708 (1969) (statement that "[i]f they ever make me carry a rifle the first man I want to get in my sights is L.B.J." not a "true threat" as a matter of law); *see also United States v. Stewart*, 686 F.3d 156, 169 (2d Cir. 2006) ("It is impermissible to sentence a defendant more harshly . . . for beliefs that some might find morally reprehensible"). Yet that is what the government invites this Court to do: establish a rule that menacing yet constitutional political speech, of a kind engaged in by a sizable number of Americans because politicians have demonstrated that it is okay, is subject to punishment. That is not the law.

Nor does the government account for the many months—well over a year—that Mr. Maiorana spent at MDC Brooklyn in an ongoing sequence of lockdowns, with him confined to his cell nearly all day, every day, as part of the MDC's draconian, futile attempt to prevent the spread of Covid-19. As a result, Mr. Maiorana has experienced the practical equivalent of confinement in the Special Housing Unit—in his cell 24 hours a day, including for meals, with only a few hours every few days in which to shower, contact family, purchase commissary, and conduct any discovery review or research—without having done anything to warrant such punishment. Yet he was infected with the virus nonetheless.

Even if there were some reason why an upward departure could be warranted here, the Court should decline to impose one, in order to account for the disgrace of Mr. Maiorana's conditions of confinement for months at a stretch. Since the onset of the pandemic, judges of this District have routinely varied downward in light of the harsh conditions at the MDC and MCC during the continuing lockdown, even for defendants convicted of drug or violent offenses without underlying medical conditions. *E.g.*, *United States v. Justin Nettles*, No. 20 Cr. 509 (KPF) (S.D.N.Y.) (downward variance by approximately 40 months in armed robbery case); *United States v. Jaime Gonzalez*, No. 16-826 (Engelmeyer) (S.D.N.Y.) (downward variance by 90 months in drug trafficking case); *United States v. Victor Camacho*, No. 19 Cr. 389 (McMahon) (downward variance by 57 months in drug trafficking case) (S.D.N.Y.); *see also, e.g.*, *United States v. Quannell Ricks*, No. 20 Cr. 330 (KAM) (downward variance by 37 months in gun trafficking case due to harsh MDC conditions during the pandemic, among other factors).

5

We ask that the Court impose a sentence of time served.

Respectfully submitted,

   /s James Darrow

James Darrow
Assistant Federal Defender
Federal Defenders of New York, Inc.
James_Darrow@fd.org
(718) 407-7419

*Attorneys for Brian Maiorana*


cc:    Counsel of record (by ECF)
       U.S. Probation Officer Patricia Sullivan (by email)
       Senior U.S. Probation Officer Jennifer G. Fisher (by email)