MANDATE

# UNITED STATES COURT OF APPEALS
## FOR THE
## SECOND CIRCUIT

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of August, two thousand twenty-five.

Before:      Debra Ann Livingston,
             *Chief Judge*,
             Pierre N. Leval,
             Barrington D. Parker,
             Raymond J. Lohier, Jr.,
             Richard J. Sullivan,
             Joseph F. Bianco,
             Michael H. Park,
             William J. Nardini,
             Steven J. Menashi,
             Eunice C. Lee,
             Beth Robinson,
             Myrna Pérez,
             Alison J. Nathan,
             Sarah A. L. Merriam,
             Maria Araújo Kahn,
             *Circuit Judges*.*

_____

United States of America,                           **JUDGMENT**

              Appellee,                             Docket No. 22-1115

v.

Brian Maiorana,

              Defendant - Appellant.

_____

The appeal in the above captioned case from a judgment of the United States District Court for the Eastern District of New York was submitted *en banc* on the district court's record and the parties' briefs.

_____

*Judge Leval and Judge Parker, who are senior judges, participated in this rehearing *en banc* pursuant to 28 U.S.C. §46(c)(1) and §294(c).

MANDATE ISSUED ON 10/20/2025

IT IS HEREBY ORDERED, ADJUDGED and DECREED that this matter is REMANDED to the district court with instructions to vacate portions of the judgment and for further proceedings in accordance with this Court's opinion.

For the Court:

Catherine O'Hagan Wolfe,
Clerk of Court

A True Copy

Catherine O'Hagan Wolfe, Clerk

United States Court of Appeals, Second Circuit

22-1115-cr
*United States v. Maiorana*

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 ℭ𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
# 𝔉𝔬𝔯 𝔱𝔥𝔢 𝔖𝔢𝔠𝔬𝔫𝔡 ℭ𝔦𝔯𝔠𝔲𝔦𝔱

August Term 2024

Submitted *en banc*:  June 25, 2025
Decided:  August 28, 2025

No. 22-1115-cr

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

BRIAN MAIORANA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of New York
No. 1:20CR00519, Frederic Block, *Judge.*

Before:

LIVINGSTON, *Chief Judge*, LEVAL, PARKER, LOHIER, SULLIVAN, BIANCO, PARK, NARDINI, MENASHI, LEE, ROBINSON, PÉREZ, NATHAN, MERRIAM, and KAHN, *Circuit Judges.**

MERRIAM, *J.*, filed the majority opinion in which LIVINGSTON, *C.J.*, LEVAL, PARKER, LOHIER, SULLIVAN, BIANCO, PARK, NARDINI, LEE, ROBINSON, PÉREZ, NATHAN, and KAHN, *JJ.*, joined.

---

* Judge Leval and Judge Parker, who are senior judges, participated in this rehearing *en banc* pursuant to 28 U.S.C. §46(c)(1) and §294(c).

MENASHI, *J.*, filed a dissenting opinion.

Brian Maiorana, who was convicted and sentenced by the United States District Court for the Eastern District of New York (Block, *J.*), appeals from the sentence imposed on him. He contends that his constitutional right to be present at his sentence was violated by the imposition, in the written judgment, of thirteen conditions of supervised release; the District Court never orally (or otherwise) notified Maiorana, before or at the sentencing hearing, of its intent to impose those thirteen conditions. The conditions in question essentially mirror the non-mandatory conditions described as "standard" conditions of supervised release in §5D1.3(c) of the United States Sentencing Guidelines.

The terms of a defendant's sentence must ordinarily be pronounced in his presence at the sentencing proceeding. We derogated from this general rule in *United States v. Truscello*, 168 F.3d 61, 62 (2d Cir. 1999), to permit a sentencing court to add to the judgment *after* sentencing, without pronouncement in the presence of the defendant, conditions that we deemed "necessary to effect" the purpose of supervised release – in particular, mandatory conditions and the discretionary "standard" conditions that were then set forth in §5D1.3(c) of the Guidelines. Maiorana's challenge has drawn our attention to recent decisions of other circuits, including recent *en banc* decisions, which render *Truscello*'s ruling on discretionary conditions an outlier. On re-examination, we find that *Truscello*'s exception to the pronouncement rule for certain non-mandatory conditions does not sufficiently respect a defendant's constitutional right to be present at sentencing. We therefore hold that to impose any non-mandatory conditions of supervised release, including those labeled as "standard" in §5D1.3(c), a sentencing court must pronounce those conditions in the defendant's presence during the sentencing proceeding and, without having done so, may not subsequently add them to the written judgment.

Proceeding *en banc*, we now overrule *Truscello*. We **VACATE** the portion of the defendant's sentence imposing the thirteen discretionary conditions of supervised release. With the consent of both parties, we also vacate a condition imposed in the written judgment that directly contradicts the judgment as orally pronounced in the defendant's presence. We **REMAND** this matter to the District Court for further proceedings in accordance with this opinion.

2

Sarah Baumgartel, Edward S. Zas, Federal Defenders of New York, Inc., New York, NY, *for Defendant-Appellant.*

Andrew M. Roddin, Anthony Bagnuola, Assistant United States Attorneys, *for* Joseph Nocella, Jr., United States Attorney for the Eastern District of New York, Brooklyn, NY, *for Appellee.*

Allison Frankel, American Civil Liberties Union Foundation, New York, NY; Daniel R. Lambright, Molly K. Biklen, New York Civil Liberties Union Foundation, New York, NY, *for amici curiae Executives Transforming Probation and Parole, American Civil Liberties Union, and New York Civil Liberties Union in support of Defendant-Appellant.*

Terence S. Ward, Federal Defender, Federal Defender's Office for the District of Connecticut, Hartford, CT; Kelly M. Barrett, First Assistant Federal Defender, Carly Levenson, Assistant Federal Defender, Federal Defender's Office for the District of Connecticut, New Haven, CT, *for amicus curiae Federal Defender's Office for the District of Connecticut in support of Defendant-Appellant.*

Meredith Esser, Assistant Professor of Law, University of Wyoming College of Law, Laramie, WY, *for amicus curiae Clinical Law Professor in support of Defendant-Appellant.*

3

SARAH A. L. MERRIAM, *Circuit Judge*:

Brian Maiorana, who was convicted and sentenced by the United States District Court for the Eastern District of New York (Block, *J.*), appeals from the sentence imposed on him. He contends that his constitutional right to be present at his sentence was violated by imposition, in the written judgment, of thirteen non-mandatory conditions of supervised release that essentially mirror the conditions described as "standard" in §5D1.3(c) of the United States Sentencing Guidelines. The District Court never orally (or otherwise) notified Maiorana, before or at the sentencing hearing, of its intent to impose those thirteen conditions.

## BACKGROUND

On April 26, 2021, Maiorana pled guilty to possession of a firearm and ammunition following a felony conviction, in violation of 18 U.S.C. §922(g)(1). The government and Maiorana each filed a sentencing memorandum, neither of which discussed potential conditions of supervised release. In the pre-sentence report ("PSR"), the Probation Office recommended that Maiorana's sentence include two years of supervised release, subject to seven "special" conditions, one of which requires that Maiorana receive a mental health evaluation and, if

deemed necessary, treatment, and that he contribute to the cost of those services (the "Mental Health Condition"). Other than these seven special conditions, the PSR did not recommend or mention any other conditions of supervised release.

On May 18, 2022, the District Court sentenced Maiorana to 36 months of imprisonment to be followed by three years of supervised release. The District Court orally imposed each of the special conditions of supervised release recommended in the PSR, subject to the modification that Maiorana would *not* be required to contribute to the cost of mental health services. *See* App'x at 87. Summarizing the sentence, the District Court stated: "So it will be 36 months followed by three years of supervised release with all of these conditions that I articulated before. There will be general conditions of supervised release as well, which will be part and parcel of the judgment." *Id.* at 106. The District Court gave no indication of what the "general conditions" would be. *Id.* There was no mention of either the mandatory or the discretionary "standard" conditions that were later imposed.

The written judgment entered on May 23, 2022, imposed **twenty-four** conditions of supervised release, including: the **seven** special conditions that were recommended in the PSR and discussed at sentencing, including a

requirement that Maiorana contribute to the cost of any required mental health services, contrary to what the District Court had stated orally at the sentencing hearing; **thirteen** additional discretionary conditions, substantially similar to those described as "standard" conditions in §5D1.3(c) of the Sentencing Guidelines;[1] and **four** mandatory conditions, each of which is required by 18 U.S.C. §3583(d).[2] *See* App'x at 110-12.

On appeal, Maiorana and the government agree that, because the provision of the written judgment requiring Maiorana to contribute to the cost of mental health services contradicts the District Court's oral pronouncement at the sentencing proceeding, that requirement must be eliminated. Maiorana further argues that we must vacate the thirteen "standard conditions of supervision" because the District Court failed to pronounce those conditions in his presence at sentencing. For the reasons set forth below, we agree with Maiorana.

---

[1] The thirteen "standard conditions of supervision" imposed in the judgment are substantively identical to the conditions set forth in Guidelines §5D1.3(c), with only small variances. For example, while the Guidelines say "the defendant shall" do certain things, the judgment instructs Maiorana directly, stating "you must." *Compare* U.S.S.G. §5D1.3(c), *with* App'x at 112.

[2] At sentencing, the District Court orally indicated that it would waive the mandatory drug testing requirement, as permitted by 18 U.S.C. §3583(d), but the written judgment did not in fact waive that requirement. *Compare* App'x at 88, *with* App'x at 110. Maiorana does not challenge this inconsistency on appeal.

## DISCUSSION

### I.    Standard of Review

"[W]hether the spoken and written terms of a defendant's sentence differ impermissibly" is "a question of law" that we review *de novo*. *United States v. Washington*, 904 F.3d 204, 207 (2d Cir. 2018); *see also United States v. Reeves*, 591 F.3d 77, 80 (2d Cir. 2010) ("We review *de novo* questions of law arising from the imposition of a condition of supervised release."). The government asked, in its original briefing to the panel, that we review only for plain error. *See* Appellee's Br. at 16; *see also United States v. Williams*, 998 F.3d 538, 540 (2d Cir. 2021) (per curiam).[3] "But plain error review is not always warranted in the sentencing context." *United States v. Matta*, 777 F.3d 116, 121 (2d Cir. 2015); *see also United States v. Green*, 618 F.3d 120, 122 (2d Cir. 2010) (per curiam) (holding that when a defendant is "deprived of any opportunity to object," strict plain error review is not appropriate). "[W]hen the point of law on appeal is a term of the defendant's sentence and the defendant lacked prior notice in the district court that the term

---

[3] The government's *en banc* briefing focuses, appropriately, on the question of whether *Truscello* should be overturned, and does not address the standard of review for Maiorana's individual appeal.

would be imposed, we will review the issue de novo even if the defendant failed to raise an objection in the district court." *Washington*, 904 F.3d at 207.

Maiorana challenges aspects of his sentence that were not discussed during his sentencing proceeding but were later added to the written judgment. Although the "special" conditions imposed were recommended in his PSR, the "standard" conditions were not. Maiorana and his counsel had no way of knowing that the District Court would include in the written judgment supervised release conditions that had not been announced at sentencing. Because these conditions were never stated or clearly referenced by the District Court when Maiorana was before it, Maiorana had no opportunity to object to them at the sentencing hearing or, indeed, at any time before the entry of the written judgment. Accordingly, we review his challenge *de novo. See Washington*, 904 F.3d at 207-08 (reviewing a sentencing challenge *de novo* because the defendant "could not have known before issuance of the written judgment that the District Court would include" the challenged condition); *cf.* Fed. R. Crim. P. 51(b) ("If a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party.").

II.   **The terms of a defendant's sentence generally must be pronounced at the sentencing proceeding.**

"Both the Constitution and the Federal Rules of Criminal Procedure grant a criminal defendant the right to be present during sentencing." *United States v. Jacques*, 321 F.3d 255, 262 (2d Cir. 2003) (citing *United States v. A-Abras Inc.*, 185 F.3d 26, 29 (2d Cir. 1999), and Fed. R. Crim. P. 43(a)). That right is codified by Federal Rule of Criminal Procedure 43(a)(3) and "encompasses the protections afforded by the . . . due process clause of the fifth amendment, and the common law right of presence." *United States v. Reiter*, 897 F.2d 639, 642 (2d Cir. 1990); *see also United States v. Arrous*, 320 F.3d 355, 359-60 (2d Cir. 2003) (acknowledging that defendants have a constitutional right to be present at sentencing).

The right to presence generally requires that the terms of a defendant's sentence be orally pronounced by the court in the defendant's presence at the sentencing proceeding. *See, e.g.*, *United States v. Rosario*, 386 F.3d 166, 168-69 (2d Cir. 2004). "[I]n the event of variation between an oral pronouncement of sentence and a subsequent written judgment, the oral pronouncement controls," *id.* at 168, "because the defendant is present at the announcement of the sentence, but not when the judgment is later entered," *United States v. Handakas*, 329 F.3d 115, 117 (2d Cir. 2003); *see also A-Abras Inc.*, 185 F.3d at 29 ("[T]he constitutional

9

right of a defendant to be present at sentencing dictates that the oral

pronouncement of sentence must control.").

## III. Our precedent allowing an exception to the pronouncement rule for discretionary conditions is now an outlier.

In light of these principles, Maiorana asserts that the thirteen discretionary

unpronounced "standard conditions of supervision" imposed in his judgment

must be removed. As noted, it is well-established that the terms of a sentence

ordinarily must be orally pronounced in the defendant's presence. However,

with respect to conditions of supervised release, we have departed from this

general rule. *See Washington*, 904 F.3d at 208. Our departure from the ordinary

requirement was articulated in *United States v. Truscello*, in which we held that

mandatory conditions of supervised release[4] and the non-mandatory conditions

described as "standard" in §5D1.3(c) of the Guidelines could be subsequently

added to the sentence after the sentencing proceeding and outside the presence

---

[4] There are only a handful of mandatory conditions of supervised release that a sentencing court "shall order"; those are set forth in the first paragraph of 18 U.S.C. §3583(d). All other conditions of supervised release are non-mandatory, or "discretionary," and a court "may order" them where appropriate. *See id.* §3583(d)(1), (2), (3). Within the category of "discretionary" conditions are those commonly referred to as "standard" and others generally referred to as "special." *Cf. United States v. Arguedas*, 134 F.4th 54, 69 (2d Cir. 2025) (discussing "mandatory, standard, and . . . special conditions of supervised release").

of the defendant. 168 F.3d 61, 63-64 (2d Cir. 1999). We held that the subsequent addition of the non-mandatory conditions was permissible because the conditions challenged were "[i]mplicit in the very nature of supervised release [because they] are necessary to effect its purpose," or were "basic administrative requirements essential to the functioning of the supervised release system." *Id.* at 62, 63 (citation and quotation marks omitted).

The "standard" conditions set forth in §5D1.3(c) have been revised since the 1999 issuance of *Truscello*. *See* Amendment 803, Supplement to Appendix C – Amendments to the Guidelines Manual (Nov. 1, 2016). Nonetheless, some of the surviving conditions are substantially similar to those on which we ruled in *Truscello*. To the extent that the §5D1.3(c) conditions imposed on Maiorana substantially replicate those on which we ruled in *Truscello*, the rule of *stare decisis* ordinarily would compel affirmance. *See United States v. Smith*, 949 F.3d 60, 65 (2d Cir. 2020) (explaining that, "ordinarily," "a panel of our Court is bound by the decisions of prior panels" (citation and quotation marks omitted)).  But Maiorana's challenge has drawn our attention to recent developments in the law. A new national consensus has emerged on this question. In recent years, *nine* circuits have held that sentencing courts are required to orally pronounce (either

11

expressly or by reference) all non-mandatory — or, put differently, discretionary — conditions of supervised release. Our position, dictated by *Truscello*, is now a clear outlier.

In 2020, in what it described as a "return to first principles," the Fifth Circuit overruled its own precedent on this question and held: "If a condition is required, making an objection futile, the court need not pronounce it. If a condition is discretionary," as is each condition listed in §5D1.3(c), "the court must pronounce it to allow for an objection." *United States v. Diggles*, 957 F.3d 551, 557, 559 (5th Cir. 2020) (*en banc*). The Fifth Circuit grounded this holding in a defendant's constitutional right to be present at sentencing, based on the underlying Fifth Amendment "right to mount a defense." *Id.* at 560; *see also id.* at 557 ("[T]he right to be present at proceedings that lack testimony (usually true of sentencings) comes from the Fifth Amendment's Due Process Clause."). In 2023, the Ninth Circuit likewise reversed its prior precedent – which had expressly relied on *Truscello*[5] – and held that defendants have a due process right to oral

---

[5] *See United States v. Napier*, 463 F.3d 1040, 1043 (9th Cir. 2006) (citing *Truscello* for the proposition that "imposition of these mandatory and standard conditions is deemed to be implicit in an oral sentence imposing supervised release"), *overruled by United States v. Montoya*, 82 F.4th 640 (9th Cir. 2023) (*en banc*).

pronouncement of all non-mandatory conditions at the sentencing proceeding. *See United States v. Montoya*, 82 F.4th 640, 650-51 (9th Cir. 2023) (*en banc*). The Fourth, Sixth, Seventh, Eighth, Tenth, Eleventh, and D.C. Circuits have all reached similar conclusions in recent years. *See United States v. Rogers*, 961 F.3d 291, 296-99 (4th Cir. 2020); *United States v. Hayden*, 102 F.4th 368, 371-74 (6th Cir. 2024); *United States v. Anstice*, 930 F.3d 907, 910 (7th Cir. 2019); *United States v. Walker*, 80 F.4th 880, 882-83 (8th Cir. 2023); *United States v. Geddes*, 71 F.4th 1206, 1215 (10th Cir. 2023); *United States v. Rodriguez*, 75 F.4th 1231, 1246 (11th Cir. 2023); *United States v. Matthews*, 54 F.4th 1, 4-6 (D.C. Cir. 2022).[6]

The decisions of our sister courts forming this new consensus vary slightly, but all agree on a fundamental premise: Sentencing courts must notify the defendant at sentencing of *all* non-mandatory conditions of supervised release.

---

[6] We have been unable to locate any published decision of the Third Circuit directly addressing the scope of the pronouncement requirement. Although the First Circuit has commented on the matter in dicta and sometimes indicated passing approval for the imposition of "standard" conditions without oral pronouncement, it has neither squarely confronted nor clearly answered this question. *See, e.g., United States v. Tulloch*, 380 F.3d 8, 13, 14 n.8 (1st Cir. 2004), *as amended* (Sept. 17, 2004) (per curiam); *United States v. Sepulveda-Contreras*, 466 F.3d 166, 169 (1st Cir. 2006); *United States v. Nardozzi*, 2 F.4th 2, 8 (1st Cir. 2021).

Both because *Truscello* is now an outlier, and because of the critical constitutional issues it implicates, we take this opportunity, proceeding *en banc*, to re-examine the exception to the pronouncement rule that *Truscello* created.

### IV. A defendant's right to presence requires that all non-mandatory conditions of supervised release, including the "standard" conditions described in Guidelines §5D1.3(c), be pronounced at sentencing.

*Truscello* departed from the general rule that "a defendant must be present at pronouncement of sentence." *Washington*, 904 F.3d at 208. Although a version of this rule is stated in Rule 43(a),[7] the defendant's right to presence "is of constitutional dimension" and grounded in Fifth Amendment due process protections, and, accordingly, we have recognized that it is "critical that the defendant be present when sentence is orally imposed." *United States v. Agard*, 77 F.3d 22, 24 (2d. Cir. 1996). Indeed, as the Fifth Circuit noted, sentencing is "usually *the* critical stage [of a criminal case] these days when well over 95% of federal defendants plead guilty." *Diggles*, 957 F.3d at 558.[8]

---

[7] Rule 43(a) reads as follows: "Unless this rule, Rule 5, or Rule 10 provides otherwise, the defendant must be present at . . . sentencing." Fed. R. Crim. P. 43(a).

[8] We also note that "the public itself 'has an independent interest in requiring a [formal] public sentencing in order to assure the appearance of justice.'" *United States v. Ramirez*, 514 F. App'x 42, 45 (2d Cir. 2013) (summary order) (quoting *Agard*, 77 F.3d at 24).

Despite the core constitutional rights at stake, *Truscello* did not delve into these issues. *See generally* 168 F.3d at 62-64. With little discussion, *Truscello* authorized departure from the constitutional norm for conditions of supervised release that were believed to be "[i]mplicit in the very nature of supervised release [because they] are *necessary to effect its purpose*," *id.* at 62 (emphasis added), or to constitute "basic administrative requirements *essential to the functioning of the supervised release system*," *id.* at 63 (emphasis added) (citation and quotation marks omitted).[9]

It is difficult to reconcile the framing of discretionary conditions as "necessary" to effect the purpose of supervised release, *id.* at 62, with the fact that their imposition is, by definition, optional – especially because Congress has made *other* conditions mandatory (and, therefore, implicitly necessary) in *every*

---

[9] *Truscello's* holding has since been applied to other non-mandatory conditions, which, like the "standard" conditions listed in §5D1.3(c), were deemed "basic administrative requirements that are necessary to supervised release." *United States v. Thomas*, 299 F.3d 150, 154 (2d Cir. 2002) (citation and quotation marks omitted); *see also United States v. Asuncion-Pimental*, 290 F.3d 91, 94 (2d Cir. 2002); *United States v. Handakas*, 329 F.3d 115, 117 (2d Cir. 2003) (collecting cases). We note that this line of cases has sometimes created confusion in the trial courts regarding when and how discretionary conditions of supervised release must be pronounced, *see Thomas*, 299 F.3d at 156 (discussing "the problems presented by *Truscello*" and its progeny), which further underscores the need for our holding today that all non-mandatory conditions must be pronounced, either explicitly or by reference, at sentencing in the presence of the defendant.

15

sentence of supervised release. *See* 18 U.S.C. §3583(d). Indeed, the fact that the Sentencing Guidelines explicitly state that the "'standard' conditions are *recommended* for supervised release," U.S.S.G. §5D1.3(c) (emphasis added), indicates that neither the Sentencing Commission nor Congress regarded them as necessary to every term of supervised release.[10]

Accordingly, we find that the distinction between mandatory and discretionary conditions as denoted in 18 U.S.C. §3583(d) provides the proper framework to determine whether pronouncement at sentencing is required, grounded in the constitutional principles underlying a defendant's right to presence. Mandatory conditions may be imposed without prior notice or pronouncement. Discretionary conditions may not.

"[A] defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). A discretionary condition, by definition, need not be imposed and,

---

[10] Indeed, in the November 1, 1998, Amendments to the Guidelines Manual, the term "(Policy Statement)" was inserted in §5D1.3(c) "to indicate that discretionary (as opposed to mandatory) conditions are advisory policy statements of the Commission, *not binding guidelines*." Amendment 584, Supplement to Appendix C – Amendments to the Guidelines Manual (Nov. 1, 1998) (emphasis added).

16

accordingly, can be contested. The pronouncement of discretionary conditions

therefore "contribute[s] to the fairness of the procedure," *id.*, by providing a

defendant the "opportunity to object . . . and seek tailored conditions of

supervised release limited to what is 'reasonably necessary' to meet sentencing

objectives," *Walker*, 80 F.4th at 882 (quoting 18 U.S.C. §3583(d)(2)); *see also Diggles*,

957 F.3d at 558 ("[P]ronouncement of a supervised release condition [is]

necessary to give the defendant a sufficient opportunity to defend . . . when

imposition of that condition is discretionary, because then the defendant can

dispute whether it is necessary or what form it should take." (citation and

quotation marks omitted)); *cf. United States v. Thomas*, 299 F.3d 150, 156 (2d Cir.

2002) (recognizing that oral pronouncement "serves the salutary function of

insuring that a defendant fully understands the contours of his punishment at a

time when any questions he or his lawyer may have can be explored and

resolved in person").

We therefore reject *Truscello's* ruling that a district court may add

discretionary conditions to the written judgment even when they are deemed

"[i]mplicit in the very nature of supervised release [because they] are necessary

to effect its purpose," 168 F.3d at 62, or considered "basic administrative

requirements essential to the functioning of the supervised release system," *id.* at 63 (citation and quotation marks omitted). We hold that a sentencing court intending to impose non-mandatory conditions of supervised release, including the "standard" conditions described in §5D1.3(c), must notify the defendant during the sentencing proceeding; if the conditions are not pronounced, they may not later be added to the written judgment.[11] A sentencing court need not read the full text of every condition on the record. But it must, at the very least, as part of the pronouncement of the sentence in the presence of the defendant during the sentencing proceeding, expressly adopt or specifically incorporate by reference particular conditions that have been set forth in writing and made available to the defendant in the PSR, the Guidelines, or a notice adopted by the court.[12] This process ensures that defendants are afforded the constitutionally grounded protections encompassed by the right to be present at sentencing.

---

[11] The new rule of criminal procedure announced by this ruling shall apply to future cases and cases currently on direct review, but it does not apply retroactively on collateral review. *See Edwards v. Vannoy*, 593 U.S. 255, 262-63 (2021); *accord Montoya*, 82 F.4th at 653 n.16.

[12] There is an easy way to ensure that a defendant has notice of and an opportunity to object to all proposed conditions: Include them in the PSR. At sentencing, a District Court "must verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report." Fed. R. Crim. P. 32(i)(1)(A). And a defendant must be given an opportunity to object to the PSR. *See* Fed. R. Crim. P.

In light of this ruling, we find that the "standard" conditions of supervised release that Maiorana challenges were not lawfully imposed upon him.

## V.     The condition requiring Maiorana to contribute to the cost of mental health services must be corrected.

Both parties agree that the condition imposed in the written judgment requiring Maiorana to contribute to the cost of mental health services impermissibly conflicts with the District Court's oral pronouncement of sentence. In light of this "clear discrepancy[,] . . . the oral pronouncement controls," and remand is required so that the District Court can conform the written judgment to the orally pronounced sentence. *United States v. Peguero*, 34 F.4th 143, 165 (2d Cir. 2022).

## CONCLUSION

For the reasons stated, we find that the written judgment's imposition of the thirteen challenged discretionary conditions of supervised release, as well as the payment provision of the mental health condition previously discussed, constituted "an impermissible modification of the spoken sentence." *Washington*,

---

32(f). If all proposed discretionary conditions are listed in the PSR, that would assure a sentencing court (and a reviewing court) that a defendant has received notice of all such conditions and had a meaningful opportunity to object. That practice – while not required – would efficiently avoid most challenges of the sort raised here.

904 F.3d at 208. We therefore **REMAND** this matter to the District Court with instructions to vacate these portions of the judgment.[13] The written judgment shall be amended to strike the requirement that Maiorana contribute to mental health services. As to the thirteen "standard" conditions, if the District Court intends to impose them in the revised judgment, it must convene a hearing in the presence of the defendant and must advise the defendant that those conditions will be imposed, either through a full recitation or through the express adoption of particular conditions that have been set forth in writing and made available to Maiorana in the PSR, the Guidelines, or a notice adopted by the court.[14] If, on the other hand, the court does not choose to reimpose the thirteen "standard" conditions, it may simply strike them from the judgment (along with the

---

[13] The appropriate remedy for the district court's error is a limited remand to address the thirteen conditions of supervised release that were not properly imposed, not a full resentencing.

[14] Maiorana has a right to a hearing, but he may elect to waive it. The District Court may provide Maiorana with written notice of the conditions it intends to impose on remand. Maiorana may elect *not* to demand a hearing regarding those conditions and insist on their pronouncement in his presence. He may instead elect to argue his position in writing only, or to simply agree with the imposition of the conditions proposed. *Cf. United States v. Lewis*, 125 F.4th 69, 74 (2d Cir. 2025) (observing that a defendant may "decline[] the district court's invitation to read aloud a condition of supervised release referenced in the PSR").

condition requiring Maiorana to contribute to the cost of his mental health

services) without need to conduct a new sentencing proceeding.

22-1115
*United States v. Maiorana*

MENASHI, *Circuit Judge*, dissenting:

Our court once agreed that "[s]entencing is a responsibility heavy enough without our adding formulaic or ritualized burdens." *United States v. Cavera*, 550 F.3d 180, 193 (2d Cir. 2008) (en banc). So much for that. Today the court imposes a "new rule of criminal procedure" that does nothing but force district courts to utter specific words when imposing a sentence of supervised release. *Ante* at 18 n.11.

We previously said that we would "not require district courts to engage in the utterance of 'robotic incantations' when imposing sentences." *United States v. Smith*, 949 F.3d 60, 66 (2d Cir. 2020) (quoting *United States v. Sindima*, 488 F.3d 81, 85 (2d Cir. 2007)). Twenty-six years ago, we recognized that when a district court pronounces a sentence of "supervised release," the defendant will understand that the sentence presumptively includes the mandatory and standard conditions that "are almost uniformly imposed by the district courts and have become boilerplate." *United States v. Truscello*, 168 F.3d 61, 63 (2d Cir. 1999). Given our longstanding precedent that a written judgment "may properly serve the function of resolving ambiguities in orally pronounced sentences," *United States v. Moyles*, 724 F.2d 29, 30 (2d Cir. 1983), an oral reference to "supervised release" at least *could* be understood to include the default conditions of supervised release that are imposed in virtually all cases—and that is all that is necessary to justify the *Truscello* rule.

If a district court intends to depart from the default conditions, one would expect it to say so. Indeed, we have recognized that "the 'standard' conditions provided in § 5D1.3(c) are *presumed suitable in all cases*" and are not "contingent on the presence of specific factors in

each case." *United States v. Asuncion-Pimental*, 290 F.3d 91, 94 (2d Cir. 2002) (emphasis added). So a district court need not provide a separate justification for imposing the standard conditions. When supervised release itself is justified, the standard conditions are justified.

The majority opinion does not—at least expressly—question that precedent. Its holding simply requires the district court to robotically incant the words "standard conditions." If it fails to do so, then we will vacate the sentence and remand for a new hearing. In this case, the district court said it would impose "general conditions of supervised release as well, which will be part and parcel of the judgment." App'x 106. Everyone knows that statement referred to "the so-called standard conditions" that are "basic administrative requirements essential to the functioning of the supervised release system" and "have become boilerplate." *Truscello*, 168 F.3d at 63 (internal quotation marks and alteration omitted). But the phrase "general conditions" does not quite match the magic words "standard conditions," so the majority vacates the sentence and remands for a new hearing at which the district court must confirm what everyone already understands: the district court intended to require the defendant to "report to the probation officer at that officer's direction; answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer; and notify the probation officer at least ten days prior to any change of residence or employment." *Id.* at 63-64 (citations omitted) (describing U.S.S.G. § 5D1.3(c)).

What a pointless waste of time. Because "[s]entencing is a responsibility heavy enough without our adding formulaic or ritualized burdens," *Cavera*, 550 F.3d at 193, I dissent.

## I

The majority opinion acknowledges that "*stare decisis* ordinarily would compel affirmance." *Ante* at 11. But the majority departs from *stare decisis* and overrules *Truscello* for three reasons: *Truscello* "implicates" some "critical constitutional issues," it does not reflect the statutory distinction between mandatory and discretionary conditions, and it fails to conform to a "new national consensus" about how to impose standard conditions of supervised release. *Id.* at 11-14. None of these reasons justifies replacing our longstanding precedent with a new formalistic ritual.

## A

The majority insists that "[d]espite the core constitutional rights at stake, *Truscello* did not delve into these issues." *Id.* at 15. That is not true. *Truscello* began its analysis by recognizing the "requirement that the defendant be present for his sentence," which is "violated" when the oral pronouncement conflicts with the written judgment. *Truscello*, 168 F.3d at 62. Because of that requirement, "where there is a *direct conflict* between an unambiguous oral pronouncement of sentence and the written judgment and commitment[,] the oral pronouncement must control." *Id.* (alterations omitted) (quoting *United States v. Marquez*, 506 F.2d 620, 622 (2d Cir. 1974)).

But "it is equally well established that it is permissible for the written judgment to resolve genuine ambiguities in the oral sentence," so when "there was no real inconsistency but rather an ambiguity, we have upheld the written judgment." *Id.* at 62-63 (citing *United States v. Pugliese*, 860 F.2d 25, 30 (2d Cir. 1988); *Moyles*, 724 F.2d at 30). The question in *Truscello* was whether the written judgment "reflected a clarification of what the oral pronouncement meant by

'supervised release.'" *Id.* at 63. Our court sensibly concluded that it did.

Well before *Truscello* we recognized that the standard conditions are "basic administrative requirement[s] essential to the functioning of the supervised release system." *United States v. Smith*, 982 F.2d 757, 764 (2d Cir. 1992). We have repeatedly—and recently—reaffirmed that "[t]hose conditions 'are basic administrative requirements, generally imposed by sentencing courts, and plainly appropriate to implement supervised release.'" *United States v. Arguedas*, 134 F.4th 54, 69-70 (2d Cir. 2025) (quoting *United States v. Jacques*, 321 F.3d 255, 263 (2d Cir. 2003)); *see also United States v. Sims*, 92 F.4th 115, 119 n.1 (2d Cir. 2024) (describing "the standard conditions" as "necessary to the administration of supervised release" and "presumed suitable in all cases") (quoting *United States v. Thomas*, 299 F.3d 150, 153-54 (2d Cir. 2002)). That is why the Sentencing Guidelines identify the conditions as "standard." U.S.S.G. § 5D1.3(c). As a result, we correctly decided that the standard conditions "are generally so appropriate to effect the purpose of supervised release that any argument" that the conditions "conflict" with an oral sentence of supervised release "would be disingenuous." *Truscello*, 168 F.3d at 64.

## 1

Nothing in the Constitution prevents us from recognizing that each of the standard conditions "presumptively applies to all terms of supervised release." *Sims*, 92 F.4th at 120. A defendant has the "right to be present at a proceeding whenever his presence has a relation, reasonably substantial, to the ful[l]ness of his opportunity to defend against the charge." *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (internal quotation marks omitted). That right "is a condition

of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Id*. (internal quotation marks omitted). In this context, the right would be violated when the defendant lacks sufficient notice of a condition such that he does not have the opportunity to object to the condition at sentencing.

*Truscello* entails no violation of that right. Because of *Truscello*, a defendant understands that an oral pronouncement of "supervised release" presumptively refers to the mandatory and standard conditions that "are almost uniformly imposed by the district courts and have become boilerplate." *Truscello*, 168 F.3d at 63. Accordingly, if a defendant believes that his circumstances require a departure from the standard conditions that presumptively apply, he may raise that objection during sentencing when the district court imposes a term of supervised release. *See, e.g.*, *United States v. Bryant*, 976 F.3d 165, 183-84 (2d Cir. 2020) (accepting *Truscello* but agreeing with a defendant's objection to the standard condition prohibiting communication with convicted felons because in the particular case it would interfere with a familial relationship).

The majority quotes *United States v. Jacques* for the proposition that "[b]oth the Constitution and the Federal Rules of Criminal Procedure grant a criminal defendant the right to be present during sentencing." *Ante* at 9 (quoting *Jacques*, 321 F.3d at 262). But *Jacques* recognized that right alongside the *Truscello* rule that "the mandatory and standard Guidelines conditions are basic administrative requirements, generally imposed by sentencing courts, and plainly appropriate to implement supervised release, and, therefore, need not be mentioned orally at sentencing." *Jacques*, 321 F.3d at 263. Our court perceived no tension between the *Truscello* rule and the right to be present at sentencing—because there is none.

**2**

If the majority were correct that, absent an oral pronouncement, the defendant is denied the opportunity to object to the standard conditions, then there would be no justification for imposing the mandatory conditions without an oral pronouncement either. The majority claims that "the court need not pronounce" a mandatory condition because any objection to a mandatory condition would be "futile." *Ante* at 12. But that is not true. Some mandatory conditions depend on the satisfaction of a factual predicate that may be disputed,[1] and the imposition of mandatory conditions may be subject to constitutional challenges.[2]

---

[1] *See, e.g.*, 18 U.S.C. § 3583(d) (providing that a district court shall order a defendant to participate in the collection of a DNA sample "if the collection of such a sample is authorized" by federal law); *United States v. Myers*, 89 F. App'x 298, 299 (2d Cir. 2004) (vacating the imposition of the mandatory condition based on the defendant's argument that "the offense underlying his conviction does not require that he cooperate in the collection of a DNA sample under the DNA Analysis Backlog Elimination Act of 2000").

[2] *See, e.g.*, *United States v. Carmichael*, 343 F.3d 756, 759 (5th Cir. 2003) (explaining that the defendants argued "that they should not be required to provide a DNA sample" because the mandatory condition of DNA collection "is unreasonable under the Fourth Amendment, both as to prisoners and as to criminals on supervised release"); *United States v. Kimler*, 335 F.3d 1132, 1137-38 (10th Cir. 2003) (explaining that the defendant challenged "the condition of supervised release requiring him to cooperate in the collection of a sample of his DNA" because "his offenses are not qualifying offenses under the DNA Analysis Backlog Elimination Act … because they did not involve the sexual abuse or exploitation of children; the DNA Act violates the Fourth Amendment's prohibition against unreasonable searches and seizures; and, the DNA Act violates the doctrine of separation of powers").

Most obviously, the mandatory condition requiring drug testing expressly provides that the condition "may be ameliorated or suspended by the court." 18 U.S.C. § 3583(d). For that reason, "[a] district court has broad discretion in deciding whether to exercise its authority to ameliorate or suspend this mandatory requirement." *United States v. Paul*, 542 F.3d 596, 600 (7th Cir. 2008); *see also United States v. Biddles*, 707 F. App'x 461, 464 (9th Cir. 2017) ("[T]he district court had the discretion to suspend the condition, if it saw 'a low risk of future substance abuse.'") (quoting 18 U.S.C. § 3563(a)(5)); *United States v. Cervantes*, 420 F.3d 792, 795-96 (8th Cir. 2005) ("[T]he court had *discretion* to ameliorate or suspend the mandatory drug-testing condition if [the defendant] posed a low risk of future substance abuse."). In this very case, as the majority recognizes, the district court "orally indicated that it would waive the mandatory drug testing requirement, as permitted by 18 U.S.C. § 3583(d)." *Ante* at 6 n.2.[3] In many cases, defendants object to the imposition of the mandatory drug-testing condition. An appellate court will review the imposition of the condition for abuse of discretion—and it may vacate and remand for resentencing based on the defendant's objection.[4]

---

[3] *See* App'x 88 ("I don't think he needs any mandatory drug treatment testing, so I'm not going to require that. I see no evidence that he needs that.").

[4] *See, e.g., United States v. Dotson*, 715 F.3d 576, 588 (6th Cir. 2013) (remanding "to the district court so that it could explain why these conditions of supervised release are warranted" when "[t]here is simply nothing in the record indicating whether [the defendant] has previously abused drugs and would be at risk for future abuse") (internal quotation marks omitted); *United States v. Suastegui*, 513 F. App'x 637, 639 n.4 (9th Cir. 2013) (remanding for the district court to conform the sentence to the oral pronouncement of only one drug test because the defendant "did not have a history of drug or alcohol abuse, and the statutory requirements of testing

Sometimes it matters whether the defendant raised an objection to the mandatory condition before the district court. An appellate court might conclude that the defendant, "having failed to object in the district court to the level of drug testing set by the court, has not met the burden on appeal of showing that the condition was an abuse of discretion." *United States v. Jeremiah*, 493 F.3d 1042, 1047 (9th Cir. 2007). The majority opinion holds, however, that when the district court does not pronounce a condition of supervised release, the defendant has been denied the opportunity to object. If that is correct, then why would the majority not require that the drug-testing condition be pronounced? Perhaps the majority has concluded that all objections to the drug-testing condition are necessarily "futile" because the majority does not believe that such an imposition would

---

provided by 18 U.S.C. § 3583(d) may be ameliorated or suspended if a low risk of future substance abuse is indicated," so "there was adequate basis for the district court's oral pronouncement" modifying the default mandatory condition) (citation omitted); *United States v. Inman*, 666 F.3d 1001, 1005 (6th Cir. 2012) ("Nothing in the record suggests that [the defendant] has any problem with alcohol or drug dependence; yet, he is now … required to submit to periodic drug testing, and required to keep the probation office informed of any prescription medications in his possession. … Where appropriate, the mandatory condition of drug testing 'may be ameliorated or suspended by the court for any individual defendant if the defendant's presentence report or other reliable sentencing information indicates a low risk of future substance abuse by the defendant.' … Because [the defendant] appears to present a low risk of future substance abuse, the district court should explain why these conditions of supervised release are warranted."); *United States v. Foote*, 413 F.3d 1240, 1253 (10th Cir. 2005) ("[T]he district court erroneously thought itself bound to impose drug testing as a condition of probation. … On remand, the district court should therefore consider whether to ameliorate or suspend the drug testing condition pursuant to its discretionary authority under 18 U.S.C. § 3563(a)(5).").

ever represent an abuse of discretion. *Ante* at 12. That conclusion would raise its own "constitutional issues."[5]

More likely, the majority knows that a defendant will understand that the mandatory conditions presumptively apply, so the defendant will object at sentencing if he seeks a departure from the default conditions of supervised release. That is correct—and the same argument applies to the standard conditions.[6] "All citizens are presumptively charged with knowledge of the law," *Atkins v. Parker*, 472 U.S. 115, 130 (1985), and that includes not only statutory requirements but also the guidelines standards that must be "the starting point and the initial benchmark" for all sentences, *Gall v. United States*, 552 U.S. 38, 49 (2007). "Because the Sentencing Guidelines have become a critical facet of federal criminal proceedings[,] familiarity with the structure and basic content of the Guidelines has become a necessity for counsel who seek to give effective representation." *Johnson v. United States*, 313 F.3d 815, 818 (2d Cir. 2002) (internal quotation marks and alterations omitted).

---

[5] *See Jeremiah*, 493 F.3d at 1046 n.2 ("The Supreme Court has repeatedly held that mandatory drug testing 'constitutes a "search" subject to the demands of the Fourth Amendment.' Special needs, such as supervised release, justify drug testing but such searches must be reasonable under the circumstances.") (citation omitted) (quoting *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995)).

[6] *Cf. United States v. Hayden*, 102 F.4th 368, 373 (6th Cir. 2024) (explaining that "the mandatory conditions listed on the standard judgment form are commonsense conditions such as not committing another federal, state, or local crime or possessing a controlled substance," so a defendant "had appropriate notice of his mandatory supervised-release conditions merely because they are statutorily required").

As we rightly held in *Truscello*, "explicit reference" to each boilerplate "condition of supervision is not essential to the defendant's right to be present at sentencing." 168 F.3d at 63. Understanding the standard conditions to presumptively apply to a sentence of supervised release does not raise any constitutional concerns.

## B

The majority says that "[i]t is difficult to reconcile the framing of discretionary conditions as 'necessary' to effect the purpose of supervised release with the fact that their imposition is, by definition, optional—especially because Congress has made *other* conditions mandatory (and, therefore, implicitly necessary) in *every* sentence of supervised release." *Ante* at 15-16 (citation omitted) (quoting *Truscello*, 168 F.3d at 62). But the distinction between mandatory and discretionary conditions did not elude the court when we decided *Truscello*. We recognized the distinction but concluded that it did not determine the outcome of the case. "While we have recognized that 'the Sentencing Reform Act eliminated standard conditions, replacing them with mandatory and discretionary conditions,'" we said, "the fact that the discretionary conditions are still labeled 'standard' within the Guidelines evidences the extent to which they are regularly imposed and relied on by the district courts." *Truscello*, 168 F.3d at 63 n.3 (quoting *Smith*, 982 F.2d at 764).

No one can seriously argue that it is optional for a defendant subject to supervised release to be required to "report to the probation officer as instructed" or to "answer truthfully the questions asked by the probation officer." U.S.S.G. § 5D1.3(c). Whether a condition is necessary to the administration of supervised release does not depend

10

on whether it is mandatory or discretionary under the Sentencing Reform Act.

Those conditions of supervised release that Congress has statutorily mandated are "mandatory," and those conditions that the Sentencing Commission has identified as "standard" are "discretionary." That distinction follows from the simple fact that Congress has the power to enact statutes while the Sentencing Commission has the power to promulgate "policy statements regarding application of the guidelines or any other aspect of sentencing," which includes "the conditions of probation and supervised release." 28 U.S.C. § 994(a)(2). But the point of the Sentencing Reform Act was for the Sentencing Commission rather than Congress to "provide certainty and fairness in meeting the purposes of sentencing." *Id.* § 991(b)(1)(B).

"Congress established the Commission to formulate and constantly refine national sentencing standards." *Kimbrough v. United States*, 552 U.S. 85, 108 (2007). The Commission "has the capacity courts lack to base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." *Id.* at 109 (internal quotation marks omitted). Congress obviously wanted the courts to pay attention to the policy statements of the Sentencing Commission: it authorized courts to impose "a further condition of supervised release" only to the extent that the condition "is consistent with any pertinent policy statements issued by the Sentencing Commission." 18 U.S.C. § 3583(d)(3). Even under an advisory guidelines regime, the Sentencing Reform Act still "requires judges to consider … the pertinent Sentencing Commission policy statements." *United States v. Booker*, 543 U.S. 220, 259-60 (2005). The Sentencing Reform Act provides no support for the proposition that Congress wanted courts to treat the standard conditions as *less*

necessary than courts did before the Sentencing Commission enumerated them.

Congress did not believe that § 3583(d) contains an exclusive list of the necessary conditions of supervised release. And in fact it does not.[7] "Congress provided for supervised release to facilitate a 'transition to community life,'" *Mont v. United States*, 587 U.S. 514, 523 (2019) (quoting *United States v. Johnson*, 529 U.S. 53, 59 (2000)), which means that probation officers must "monitor an individual on supervised release, such that they can act as the 'eyes and ears' for the court," *United States v. Oliveras*, 96 F.4th 298, 311 (2d Cir. 2024) (quoting *United States v. Reyes*, 283 F.3d 446, 455 (2d Cir. 2002)). The mandatory conditions do not even attempt to facilitate that supervision. In many cases, the mandatory conditions are almost meaningless. Imagine a defendant who did not commit a specific offense that triggers additional conditions and who does not show a risk of substance abuse or owe restitution. The mandatory conditions will require that this defendant "not commit another Federal, State, or local crime during the term of supervision" and "not unlawfully possess a controlled substance." 18 U.S.C. § 3583(d). The defendant might also need to "cooperate in the collection of a DNA sample" if the collection "is authorized" by law. *Id.* These mandatory conditions are equivalent to ordering the defendant to obey the law. The conditions have nothing to do with what is necessary to administer supervised release.

---

[7] *Cf. United States v. Walker*, 80 F.4th 880, 882 (8th Cir. 2023) ("As a practical matter, it would be virtually impossible to supervise a defendant or verify compliance with the two special conditions that were orally pronounced without at least some of the standard conditions of supervised release being imposed.").

Congress tasked the Sentencing Commission with elaborating on those conditions "essential to the functioning of the supervised release system." *Truscello*, 168 F.3d at 63 (quoting *Smith*, 982 F.3d at 764). In a forthcoming amendment to the guidelines, the Sentencing Commission will reiterate that a district court may modify the standard conditions in appropriate cases. But "[t]he Commission nonetheless recognizes the value of a list of 'standard' conditions that *establish basic behavioral expectations and facilitate probation officers' supervision*. Accordingly, the amendment maintains the list of 'standard' conditions without change but notes the court's authority to impose and adjust them as appropriate."[8]  The standard conditions have been discretionary since before we decided *Truscello*. In that case and others we relied on other considerations—(1) the purpose of the standard conditions to establish basic behavioral expectations and facilitate probation officers' supervision and (2) the practice of district courts in adopting the conditions as standard—to conclude that a pronounced sentence of supervised release would be understood to presumptively include those conditions.

The Sentencing Commission has recognized that there is no tension between the judicial authority to modify the conditions, on the one hand, and maintaining a list of standard conditions that set basic expectations for supervised release, on the other. That is what *Truscello* understood: the distinction between mandatory and discretionary conditions in the Sentencing Reform Act does not answer the question of which conditions set the basic expectations and therefore presumptively apply when a district court orders supervised release. *See Truscello*, 168 F.3d at 63 n.3.

---

[8] *Sentencing Guidelines for United States Courts*, 90 Fed. Reg. 19798, 19816 (May 9, 2025) (emphasis added).

13

## C

Because it has no legal reason for abandoning *Truscello*, the majority claims that it must do so to join "[a] new national consensus [that] has emerged on this question." *Ante* at 11. That is not a persuasive reason either.

First, among those decisions of other circuits on which the majority relies, only two appear to have overturned a prior precedent similar to *Truscello* in order to adopt a requirement of oral pronouncement. *See United States v. Montoya*, 82 F.4th 640, 645 (9th Cir. 2023); *United States v. Diggles*, 957 F.3d 551, 557 (5th Cir. 2020). The other circuits did not need to decide whether to abandon an established default rule and therefore did not consider the weight of *stare decisis*.

There are "several factors to consider in deciding whether to overrule a past decision, including the quality of its reasoning, the workability of the rule it established, its consistency with other related decisions, and reliance on the decision." *Knick v. Township of Scott*, 588 U.S. 180, 203 (2019) (internal quotation marks and alterations omitted). *Truscello* was well-reasoned and followed logically from other decisions holding that the standard conditions are "basic administrative requirement[s] essential to the functioning of the supervised release system," *Smith*, 982 F.2d at 764, and that a written judgment "may properly serve the function of resolving ambiguities in orally pronounced sentences," *Moyles*, 724 F.2d at 30. It is today's decision that is inconsistent with those other related decisions.[9] And *Truscello* established a "workable" rule that "can be understood and

---

[9] *See ante* at 15-16 (stating that the standard conditions are "optional" rather than "necessary to every term of supervised release").

14

applied in a consistent and predictable manner." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 280-81 (2022). It has been so understood and applied for twenty-six years. *See infra* Part II.A. Abandoning the well-established rule "threatens to result in substantial—and utterly pointless—costs." *Montoya*, 82 F.4th at 664 (Collins, J., dissenting).

Second, the other circuits did not have persuasive reasons for requiring oral pronouncement. Like the majority opinion, those courts gestured at the "right to be present at sentencing," *United States v. Rogers*, 961 F.3d 291, 298 (4th Cir. 2020), but *Truscello* does not violate that right, *see supra* Part I.A.1. The courts said that a district court does not need to pronounce the mandatory conditions because "the district court has no discretion to omit them," *Rogers*, 961 F.3d at 297,[10] but that is not true, *see supra* Part I.A.2. And the courts invoked the "distinction between mandatory and discretionary conditions" under the Sentencing Reform Act, *United States v. Matthews*, 54 F.4th 1, 4 (D.C. Cir. 2022), but that distinction does not determine which conditions set the basic expectations that presumptively apply when a district court orders supervised release, *see supra* Part I.B.

Third, the national consensus that the majority seeks to join is illusory. The First Circuit, for example, agrees with *Truscello.* In this appeal, Maiorana concedes that "the First Circuit follows a rule similar to this Court's." Appellant's Br. 26 n.7. And he is correct. The

---

[10] *See also Hayden*, 102 F.4th at 373 (claiming that the district court has "no discretion to depart from imposing them"); *United States v. Geddes*, 71 F.4th 1206, 1216-17 (10th Cir. 2023) ("Mandatory conditions like these do not create a conflict because the district court has no discretion to omit them. Any objection to these two conditions would be futile.") (citation and footnote omitted); *Diggles*, 957 F.3d at 558 ("[W]hen a condition is mandatory, there is little a defendant can do to defend against it.").

15

First Circuit has held that "[d]efendants are deemed to be on constructive notice for mandatory and standard conditions announced for the first time in a written judgment, and therefore have no right-to-be-present claim with respect to any such condition." *United States v. Sepulveda-Contreras*, 466 F.3d 166, 169 (1st Cir. 2006). In an earlier case, the First Circuit explained:

> On these facts, we believe that the reasoning in *United States v. Truscello* applies. In *Truscello*, the Second Circuit considered whether the sentencing court's failure to mention any conditions at all at sentencing after imposing a term of supervised release precluded it from subsequently including certain mandatory and standard conditions in its written judgment. The court of appeals held that it did not because there was no "actual" or "real inconsistency" between the orally imposed term of supervised release and the written judgment specifying the conditions applicable to such term. As it explained, implicit in the very nature of supervision is that conditions are placed on the supervised defendant; thus, in its view, the district court's written judgment merely *clarified* the ambiguity in the oral sentence.

*United States v. Tulloch*, 380 F.3d 8, 12 (1st Cir. 2004) (citations and footnote omitted). The First Circuit emphasized that "as *Truscello* indicates, standard conditions either impose requirements essential to the basic administration of the supervised release system, or regulate other matters necessary to effect the purpose of supervised release," and "are so uniformly imposed that they have become boilerplate in federal courts." *Id.* at 14 n.8.[11] The First Circuit, like *Truscello*, is right.

---

[11] *See also United States v. Nardozzi*, 2 F.4th 2, 8 (1st Cir. 2021) ("The district court must raise non-standard conditions of supervised release at

Even those circuits that now disagree with *Truscello* do not follow a uniform approach. In some circuits, a district court may satisfy the pronouncement requirement "by simply saying that it is imposing the 'standard' conditions." *Matthews*, 54 F.4th at 6 n.2.[12] Other circuits have said that a district court may incorporate the standard conditions by reference to a specific document such as the PSR, the guidelines, or a standing order.[13] And still other circuits allow the incorporation by reference only if the document listing the conditions was "provided to the defendant in advance of the hearing." *Montoya*, 82 F.4th at 652.[14] The majority opinion allows a

---

sentencing.") (citing *Sepulveda-Contreras*, 466 F.3d at 169-70); *United States v. Santiago*, 769 F.3d 1, 10 (1st Cir. 2014) ("The government concedes that because condition thirteen was a non-mandatory, non-standard condition, Santiago is not presumed to have been on constructive notice of the condition.") (citing *Sepulveda-Contreras*, 466 F.3d at 169-70).

[12] *See also United States v. Martinez*, 15 F.4th 1179, 1181 (5th Cir. 2021) ("Because the court told Martinez it was imposing 'standard conditions,' he had notice and an opportunity to object (or, at a minimum, to ask for more specificity about the conditions).").

[13] *See United States v. Rodriguez*, 75 F.4th 1231, 1246 (11th Cir. 2023) ("A district court may easily satisfy th[e] [pronouncement] requirement by referencing a written list of supervised release conditions. For instance, the court may orally adopt the conditions of supervised release recommended in the defendant's PSR or in a standing administrative order."); *Rogers*, 961 F.3d at 299 ("[A] district court may satisfy its obligation to orally pronounce discretionary conditions through incorporation—by incorporating, for instance, all Guidelines 'standard' conditions when it pronounces a supervised-release sentence, and then detailing those conditions in the written judgment.").

[14] *See also Hayden*, 102 F.4th at 372 ("[D]efendants' due-process rights are satisfied when the sentencing court incorporates the standard conditions by reference to language contained in a publicly available districtwide order,

17

district court to incorporate the conditions by reference to "the PSR, the Guidelines, or a notice adopted by the court," but only if the document has been "made available to the defendant"—whatever that means. *Ante* at 18.

Some circuits have approved the incorporation by reference to "a court-wide standing order that lists certain conditions of supervised release." *Rogers*, 961 F.3d at 299.[15] The majority opinion does not mention standing orders but allows incorporation by reference to a "notice adopted by the court"—again, whatever that means. *Ante* at 18.

And does the new pronouncement requirement mean that a district court must not only pronounce that it is imposing the standard conditions but also provide reasons for doing so? Some

---

an individual defendant's presentence investigation report, or other *document provided to the defendant before sentencing*.") (emphasis added).

[15] *See also Hayden*, 102 F.4th at 374; *Montoya*, 82 F.4th at 652; *Rodriguez*, 75 F.4th at 1246; *Diggles*, 957 F.3d at 561. Other circuits have not specifically addressed the question. *See, e.g., Geddes*, 71 F.4th at 1215; *Matthews*, 54 F.4th at 6 n.2.

circuits appear to say yes. [16] Others say definitely not. [17] And still others have yet to provide an answer. [18]  In today's decision, our court emphasizes that only the *mandatory* conditions are "'necessary' to effect the purpose of supervised release." *Ante* at 15. The standard conditions, by contrast, are discretionary and "their imposition is, by definition, optional." *Id.* That statement calls into question our precedents holding that because the standard conditions are "necessary to the administration of supervised release," those

---

[16] *See Diggles*, 957 F.3d at 558 ("Tying the pronouncement requirement to section 3583(d)'s dividing line produces another benefit: it will mirror the statutory requirement for when a court must justify the conditions it imposes (what courts call the 'articulation' requirement)."); *Matthews*, 54 F.4th at 6 ("[N]o matter how commonsensical the standard conditions may seem, the governing statute classifies them as discretionary, as does the policy statement itself. And courts may impose discretionary conditions only after making an individualized assessment of whether they are 'reasonably related' to normal sentencing factors and whether they involve 'no greater deprivation of liberty than is reasonably necessary' under the circumstances.") (citations omitted).

[17] *See Hayden*, 102 F.4th at 372 ("[D]efendants' due-process rights are satisfied when the sentencing court incorporates the standard conditions by reference …. But for special discretionary conditions not previously made available to a defendant, a district court must always orally pronounce them and explain its basis for imposing them, provided that its reasoning is not readily apparent from the record."); *Geddes*, 71 F.4th at 1213 ("[T]his circuit does not require courts to make specific findings before imposing standard conditions.").

[18] *See Rodriguez*, 75 F.4th at 1250 n.10 ("Rodriguez further argues that the district court erred by failing to explain why the supervised release conditions it imposed were justified in light of the statutory sentencing factors and his individual circumstances. Because we conclude that Rodriguez was denied due process with respect to these conditions and remand for resentencing, we do not address his argument that the district court failed to adequately explain them.").

conditions are "presumed suitable in all cases" and not "contingent on whether certain circumstances are present." *Sims*, 92 F.4th at 119 n.1 (internal quotation marks omitted). So perhaps it is now an open question in the Second Circuit whether each of the standard conditions requires a case-by-case justification because those conditions are "optional" rather than "necessary."

Years before *Truscello*, our court held that a general reference to "the standard conditions that have been adopted by this court" was sufficient to impose the standard conditions. *Smith*, 982 F.2d at 759.[19] The majority opinion could have overruled *Truscello* and returned to that simple rule of oral pronouncement, which would have aligned our case law with other circuits in the purported national consensus. But the majority has instead introduced destabilizing uncertainties.

## II

The majority opinion claims that *Truscello* has "created confusion in the trial courts regarding when and how discretionary conditions of supervised release must be pronounced." *Ante* at 15 n.9. That is wrong again. *Truscello* has provided a clear rule for twenty-six years. Upending the longstanding rule will create confusion.

## A

The majority cites *United States v. Thomas* for the proposition that there are "problems presented by *Truscello*." *Id.* (quoting 299 F.3d at 156). But *Thomas* illustrates how *Truscello* has settled expectations with respect to the standard conditions. The defendant in *Thomas* did

---

[19] *See Truscello*, 168 F.3d at 63 ("[W]e previously have concluded that, at oral sentencing, even the most general allusion to the 'standard conditions' of supervised release is a sufficient basis on which to predicate the imposition of each of the conditions normally regarded as standard.").

20

not bother to "challenge the mandatory or standard conditions, conceding that, under *Truscello*, 'the imposition of a term of supervised release may include by implication the "standard" or mandatory conditions of supervision.'" 299 F.3d at 153 (alteration omitted) (quoting the defendant's brief).[20]

That concession made sense. In the twenty-six years since *Truscello*, we have repeatedly reaffirmed the straightforward default rule it established with respect to the standard conditions.[21] Far from

---

[20]  *See also United States v. Williams*, No. 23-6458, 2024 WL 5113144, at *3 n.4 (2d Cir. Dec. 16, 2024) ("[A]lthough [the defendant] argues that the district court erred in imposing the standard conditions of supervised release that were not orally pronounced at sentencing, he concedes that this argument is precluded by our decision in *United States v. Truscello*.").

[21]  *See, e.g.*, *United States v. Genao*, No. 23-6710, 2024 WL 4404042, at *2 (2d Cir. Oct. 4, 2024) (identifying "the standard conditions in § 5D1.3(c), which the district court need not orally pronounce"); *United States v. Whitaker*, No. 21-1543, 2023 WL 5499363, at *3 (2d Cir. Aug. 25, 2023) ("Such routinely-imposed conditions that provide essential details for compliance need not be orally imposed because, we have explained, they are implicit in the very nature of supervised release.") (internal quotation marks and alterations omitted); *United States v. Singh*, 726 F. App'x 845, 849 (2d Cir. 2018) ("A district judge, however, is not required to pronounce standard conditions of supervised release orally at sentencing. Standard conditions are basic administrative requirements essential to the functioning of the supervised release system, and the district court does not deprive a defendant of his right to be present at sentencing by failing to reference explicitly each and every standard condition of supervision.") (internal quotation marks, alteration, and citation omitted); *United States v. Handakas*, 329 F.3d 115, 117 (2d Cir. 2003) ("[W]e permitted the later inclusion of conditions listed as 'mandatory' or 'standard' in subsections 5D1.3(a) and (c) of the Sentencing Guidelines.") (alteration omitted); *Jacques*, 321 F.3d at 263 ("In the supervised release context we have held that the mandatory and standard Guidelines conditions are basic administrative requirements, generally imposed by sentencing courts, and plainly

treating that rule as an outlier in our case law, we have extended it to certain special conditions, *see Asuncion-Pimental*, 290 F.3d at 94, and to conditions of probation, *see Jacques*, 321 F3d at 265-66. Today's decision overrules those precedents as well, which means there is a large body of precedent we are throwing out. If the extensions of *Truscello* created line-drawing problems, we could have proceeded more deliberately with respect to those cases. But there is no difficulty in identifying the standard conditions. Those conditions are listed in § 5D1.3(c), a written document with which every competent defense attorney is familiar. *See Johnson*, 313 F.3d at 818.

This case illustrates the clarity of the *Truscello* rule. At Maiorana's sentencing, the district court announced that it would impose a term of supervised release. That put Maiorana on notice that the mandatory and standard conditions would presumptively apply. The district court eliminated any possible doubt when, after imposing the special conditions recommended in the PSR, the district court stated that it would impose "general conditions of supervised release as well, which will be part and parcel of the judgment." App'x 106.

The majority opinion indulges the pretense that Maiorana had "no indication of what the 'general conditions' would be" and could not possibly have known that the standard conditions would apply to his supervised release. *Ante* at 5. In at least some of the circuits that the majority opinion purports to follow, the pronouncement in this case would have been sufficient because it provided "notice and an

---

appropriate to implement supervised release, and, therefore, need not be mentioned orally at sentencing."); *Thomas*, 299 F.3d at 153 ("In *Truscello* we held that a written judgment does not conflict with an oral sentence where a district court fails to specify conditions of supervised release orally, but nevertheless includes in the written judgment conditions listed as mandatory or standard in U.S.S.G. § 5D1.3(a) or (c).").

opportunity to object (or, at a minimum, to ask for more specificity about the conditions)." *Martinez*, 15 F.4th at 1181. A pronouncement that allowed the defendant "to either object … or to ask the district court to clarify which conditions it imposed upon him" would suffice in those circuits. *Hayden*, 102 F.4th at 374. In this case, Maiorana did not seek clarification because he understood what the district court meant. But in our circuit we are nevertheless still litigating the question of whether the phrase "general conditions" might have referred to the "standard conditions" that are typically applied.[22]  The *Truscello* rule would avoid this make-believe debate.

## B

Unsettling our precedent in this area invites litigation over other questions. We know that "[a] district court is required to make an individualized assessment when determining whether to impose a special condition of supervised release, and to state on the record the reason for imposing it; the failure to do so is error." *United States v. Betts*, 886 F.3d 198, 202 (2d Cir. 2018). We have not required such an assessment for "the 'standard' conditions provided in § 5D1.3(c)" because those conditions "are presumed suitable in all cases." *Asuncion-Pimental*, 290 F.3d at 94. According to the majority opinion, however, we cannot treat the standard and special conditions differently; the relevant distinction is between mandatory and discretionary conditions—and all discretionary conditions are, "by definition, optional." *Ante* at 15. So must a district court provide an individualized assessment for the standard conditions?  The

---

[22] I think it did. *Compare General*, Merriam-Webster Dictionary (2025) ("applicable to or characteristic of the majority of individuals involved"), *with Standard*, Merriam-Webster Dictionary (2025) ("regularly and widely used, available, or supplied").

purported national consensus we have joined does not supply an answer. And what does it mean that the district court may "reference particular conditions that have been set forth in writing and *made available* to the defendant"? *Id.* at 18 (emphasis added). Stay tuned.

If a district court fails to pronounce the standard conditions in the way that the majority opinion requires—whatever that is—our court will remand for another pronouncement. Because the standard conditions are almost always appropriate, the remand will do nothing but impose costs except in the rare case in which special circumstances require the district court to provide an extra justification for a standard condition. Under the *Truscello* rule, however, we already remand in such cases.[23] So today's decision essentially retains the *status quo ante* in those cases in which a remand would be justified while imposing an unnecessary magic-words requirement on district courts that will result in additional useless remands.

The majority opinion preemptively declares that the new rule "does not apply retroactively on collateral review." *Ante* at 18 n.11. But for cases currently on appeal, "[t]he result may be many comparable remands in other cases, each of which will require an in-

---

[23] In *Bryant*, for example, the court considered a challenge to the standard condition prohibiting a defendant from communicating with convicted felons. 976 F.3d at 172. The court recognized that "a district court need not explain its reasoning when imposing standard conditions." *Id.* at 183-84 (citing *Truscello*, 168 F.3d at 63). But "because th[e] condition as applied to [the defendant] implicate[d] a protected familial relationship," we held that "a more thorough justification [was] required." *Id.* at 184. We "remand[ed] to allow the district court to provide further justification for th[e] condition as applied to [the defendant's] immediate family members or to exempt such communications and interactions from the restriction." *Id.*

person hearing—which will require, for currently incarcerated defendants, physical transportation back to the sentencing district court—and all for the limited purpose of briefly asking the defendant in person whether he or she has reviewed the list of standard conditions with counsel before the court then orally adopts that list by cross-reference. Neither due process nor common sense require such a result." *Montoya*, 82 F.4th at 664 (Collins, J., dissenting).

In a tacit admission that there is no need for any of this, the majority opinion emphasizes that while "Maiorana has a right to a hearing," he "may elect to waive it." *Ante* at 20 n.14. And it emphasizes again that "Maiorana may elect *not* to demand a hearing regarding those conditions and insist on their pronouncement in his presence." *Id.* (emphasis in original). In other words, "[d]espite the core constitutional rights at stake," *id.* at 15, the majority opinion goes out of its way to provide assurance to defendants and courts that the new procedure it has invented will not always need to be followed.

There was an easier way to obtain that result. The Supreme Court has said that "appellate courts retain broad discretion in determining whether a remand for resentencing is necessary." *Molina-Martinez v. United States*, 578 U.S. 189, 204 (2016). We have previously exercised that discretion to say that we will not remand for the district court simply to say something "already apparent in the record." *United States v. Ortiz*, 100 F.4th 112, 121 (2d Cir. 2024). And we did not confer on a defendant the right to insist on a remand for "the utterance of robotic incantations" or other "formulaic or ritualized burdens." *Id.* (internal quotation marks omitted). We should have adhered to those precedents and affirmed the judgment in this case.

\*    \*    \*

I would not discard our longstanding precedent in favor of a new burdensome ritual for district courts to perform. No law requires that. I dissent.